STONER v. ELLIS.

STONER
v.
ELLIS.

6   152
158  452

Where matters of defence are set up by special plea, before a justice of the peace, which are admissible in evidence under the general issue, inasmuch as the defendant may avail himself of all matters admissible under that issue without plea, it is unimportant whether a motion to reject such special plea is correctly decided or not.

The R. S. 1843 so far removed the distinction which previously prevailed, in regard to the transfer of negotiable paper before and after due, as to let in the same defences against a note assigned before as against one assigned after maturity.

The declarations of the assignor of a note made while he was the holder, whether that was before or after it became due, were, under the R. S. 1843, admissible in evidence, in a suit by the assignee against the maker, to impeach the consideration.

Evidence will be presumed to have properly been admitted, where the record does not show the contrary.

A material alteration of an instrument made by a party who claims the benefit of it, without the consent of the party against whom it is sought to be enforced, renders it void.

Where the alteration of an instrument is of such a character as to defeat entirely its operation for any purpose, as in the case of the erasure of the signature and seal to a deed, or other instrument, so that, admitting all to be true that appears upon the instrument when produced, it would be void in law, it should be explained, in the first instance, before it should be permitted to go to the jury. In other cases, the instrument should be given in evidence, and should go to the jury, upon the ordinary proof of its execution, although an alteration may appear in it, leaving the parties to such explanatory evidence as they may choose to offer. But if there is neither intrinsic nor extrinsic evidence as to when the alteration was made, the presumption of law is that it was made before or at the execution of the instrument.

In a suit upon a note given in consideration of the assignment of a patent, the defendant, in order to show that no patent had ever been obtained, offered in evidence, against the plaintiff's objection, a certificate of the commissioner of patents, under his seal of office, stating that no such patent had been issued. *Held,* that the certificate was not admissible.

ERROR to the *Delaware* Circuit Court.

GOOKINS, J.—*Stoner*, as assignee of *Casperson*, brought an action against *Ellis*, before a justice of the peace, on a note for 50 dollars. *Ellis* filed certain pleas before the justice, impeaching the consideration of the note. There was a trial before the justice, and judgment for the defendant, from which the plaintiff appealed to the Circuit Court, where the cause was tried with the same result. Before proceeding to trial in the Circuit Court, the plaintiff moved

to set aside the defendant's pleas. The motion was over-ruled, and the plaintiff excepted. As the matters of defence indicated by the pleas were admissible in evidence under the general issue, of which the defendant may avail himself before a justice, according to the statute, without pleading, it is of no consequence whether the decision upon the motion to reject the pleas was right or wrong.

On the trial, one *Cleft*, a witness for the defendant, was permitted to testify, against the objection of the plaintiff, to certain declarations of the assignor, made before the assignment of the note, tending to impeach the consideration. The plaintiff insists that this testimony was erroneously admitted. It was decided by this Court in the case of *Blount* v. *Riley*, 3 Ind. R. 471, that the declarations of the assignor of a note, which was assigned after it became due, made while he held it, were admissible in evidence to prove payment. The authorities quoted in that case distinguish between paper negotiable, in the mercantile sense of that term, and that which is assignable by statute. In case of the former, if negotiated before due, the declarations of the payee are not admissible against the holder. It would greatly impair the commercial value of such paper, if it were liable to be attacked in that way. But if negotiated after due, the evidence is admissible. The dishonor of the note casts suspicion upon it; and he who takes it under such circumstances, takes it subject to all defences. He stands, not upon the credit of the bill or note, as a negotiable instrument, but upon the title of the prior holder, and, where a person must recover through the title of another, he is bound by the declarations of the party through whom he claims. 1 Phill. on Ev. 394.— *Blount* v. *Riley*, *supra*. In the present case, it does not appear whether the note was assigned before due or afterwards; but it makes no difference. The statute of 1843, p. 577, sec. 8, which governs the case, provides that the maker of a note like this, in an action by the assignee, may set up any defence which he had as against the assignor before notice of the assignment, and which he might have set up against the payee. This removes the distinction

which prevails in regard to the transfer of negotiable paper before and after due, and lets in the same defence as would be admissible against the holder of such paper, negotiated after maturity. The declarations of *Casperson*, made while he was the owner of the note, were properly admitted in evidence, although it may have been assigned before due.

The witness *Cleft* was also permitted to testify, against the plaintiff's objection, that *Casperson* had showed him a power of attorney from *Huff* and *Myers*, authorizing him to sell a patent right for which the defendant alleged the note was given; which, it is said, was permitting the contents of a written instrument to be proved by parol. Supposing this evidence could, in any view of the case, have injured the plaintiff, we do not think the admission of the evidence, as far as it went, clearly erroneous. It was competent for the defendant to prove the existence of the paper, with a view to letting in secondary evidence, in case of loss of the original, or of the refusal of his adversary to produce it upon notice. The record does not contain all the evidence, and, for aught that appears, the proof, as far as it went, may have been proper for some such purpose. We are not to presume that the Circuit Court committed an error, but if, in any view of the case, the evidence was proper, we are to presume it was admitted correctly. If it was not properly followed up, it was under the control of the Court, and liable to be rejected at the proper time.

The defendant offered in evidence an instrument purporting to be a deed from *Samuel Huff* and *John Myers*, which recited that they had obtained from the *United States* letters patent for certain improvements in the construction of churns, and purporting to assign to the defendant the right to make and vend said improvement in the counties of *Lee* and *Henry*; with a covenant of warranty. Certain erasures appeared in the instrument, immediately following the word "*Henry*," and from the bill of exceptions it appears that the words erased were "*Jefferson, Van Buren, Wappelo, Davis, Appalona, Keokuk*, in the state of *Iowa*." The defendant offered no evidence to explain the

erasures, except what appeared on the face of the paper. They appear to have been made by drawing a pen several times through the words, but leaving them still legible. The paper was admitted in evidence, and the plaintiff excepted, on the ground that the alteration was not explained.

There are few questions upon which the authorities are more various and conflicting than upon the one presented by this objection. That a material alteration of an instrument, by a party who claims the benefit of it, made without the consent of the party against whom it is sought to be enforced, renders it void, is a proposition too well settled to admit of doubt. But upon whom devolves the burden of proof, that the alteration was made before or after the execution of the instrument, is the difficult question in the case. Sometimes the rule has been stated, in general terms, that the party producing the paper must explain the apparent alteration before it can be given to the jury, the Court assuming to decide, upon inspection of the instrument, that it is *prima facie* invalid. Other authorities have held that the instrument should be given in evidence to the jury, for their inspection, leaving both parties to offer such evidence as they may think proper, touching the alteration; and those authorities which have given the paper to the jury have yet been divided upon the question whether it was *prima facie* void or valid; and consequently putting the burden of proof sometimes upon one party, and sometimes upon the other.

We shall review a few only of the numerous authorities upon this question; but shall refer to a sufficient number of them to show the various positions which have been assumed. Before referring to these authorities, however, we will remark, that a careful examination of what has been *said* and *decided* upon the question, will show, that the particular circumstances of each case have had much influence upon the rule which the Court has adopted; and further, that some of the *American* Courts, in following the *dicta* of *English* judges, have overlooked a distinction

May Term,
1855.

STONER
v.
ELLIS.

which prevails there between negotiable and other instruments, arising upon the operation of the stamp act.

In the case of *Runnion* v. *Crane*, 4 Blackf. 466, which was assumpsit upon a note payable four months after date, a note was given in evidence from which the word "five" had been erased, and "four" inserted. It was held that there was no error ; but in that case there was a default, which admitted the note as declared on. The inference from the reporter's note in that case, would seem to be, that had the execution of the note been put in issue, it would have devolved upon the plaintiff to prove that the alteration was made before the execution of the instrument. Several *English* authorities, arising upon negotiable instruments, are referred to in support of this view of the subject.

An early case in *New-York*, was that of *Rankin* v. *Blackwell*, 2 Johns. Cas. 198, in which the alleged alteration was by changing the date of a note on which the suit was brought, and by altering the amount from 300 to 1300 dollars. In that case, it was decided, that the alteration on the face of a note, unsupported by other proof, was not competent evidence to set it aside ; but that where such alteration or erasure appeared as rendered the note suspicious, the party against whom it was sought to be enforced might show corroborating circumstances to strengthen the suspicion. This case treats a note apparently altered as *prima facie* valid.

In *Prevost* v. *Gratz*, 1 Pet. C. C. R. 369, *Washington*, J., said, "the legal presumption is that an alteration is made after the execution of the instrument. But that case did not rest upon presumption. A trustee for the sale of certain real estate had rendered an account of a sale to one party in interest, by which the tract appeared to have been sold to a person, naming the vendee, and the vendee's name in the account exhibited was written over an erasure. It appeared, however, that he had rendered to *Croghan*, another party in interest, an account identical, in all respects, with the former, in which the name erased appeared as the pur-

chaser. They were both originals, and the altered account was invalidated by the true one.

In *Jackson* v. *Osborn*, 2 Wend. 555, it was said that a material alteration in a deed, not noted, was a suspicious circumstance, which required explanation. There were other questions affecting the admissibility of the deed, in this case. It was not properly proved, and an attempt to show that the subscribing witness, by whom the deed had been proved before a commissioner, had been prosecuted for forgery by the party who offered the deed in evidence, had, no doubt, its influence in the ruling of the Court. The alteration was the erasure of the name of one grantee and the insertion of another. The Court in that case said, whether the explanation was sufficient, was a question for the jury.

In *Newcomb* v. *Presbrey*, 8 Met. 406, a deed was offered in evidence, from which the signature of the grantor had been erased. The deed had been withheld from record for eight or nine years, and to give it effect, it would have operated as a fraud upon a subsequent purchaser. It was held not admissible, unless explained.

It was said, in the case of the *United States* v. *Linn*, 1 How. 104, that the law imposes upon the party who claims under the instrument the burden of explaining the alteration; but the point was not in judgment. *Linn*, a land-office receiver, had executed a bond to the *United States*, with *Duncan* and others, his sureties. To an action on the bond, *Duncan* pleaded that after he executed it, the seals were attached. As no alteration appeared on the face of the instrument, there was no ground for any presumption on the subject. For the *dictum*, *Henman* v. *Dickenson*, 5 Bing. 183, and *Taylor* v. *Mosely*, 6 Carr. and Payne 273, are quoted, both of which were upon negotiable instruments.

*Wilde* v. *Armsby*, 6 Cush. 314, was an action upon a written guaranty, by which the defendant had undertaken to guarantee certain payments by *George Winchester & Co.*, and the instrument given in evidence had the words "*& Co.*" interlined in a different hand-writing, and with

a different colored ink from the body of the instrument. The paper was given to the jury, and both parties gave evidence touching the alteration. The jury were instructed that the burden of proof, that the alteration had been made before the execution of the instrument, was upon the plaintiff. In that case, the *English* authorities are cited arising upon negotiable instruments. A *dictum* is also quoted from *Hemming* v. *Trenery*, 9 Adol. and Ellis 926, which was on a guaranty; but the question as to when the alteration was made, did not arise in the case. It was an action of assumpsit to which non-assumpsit was pleaded; but the case was governed by a rule adopted in 4 *William* 4, which required defences of this kind to be specially pleaded.

The *English* cases, arising upon bills of exchange, proceed upon a wholly different principle from others, owing to the operation of the stamp act. No one doubts that at the common law, the parties may change their contracts at pleasure; but a material alteration, apparent on a bill of exchange, makes it absolutely void, although made with the agreement of both parties, unless it has a new stamp. Accordingly, when a negotiable instrument is offered in evidence, in which an alteration appears, the Court will pronounce it void *per se*, as a fraud upon the revenue, unless it is twice stamped, or unless the party offering it will show that the alteration was made before it was once complete. Such will be found to be the import of the cases of *Bishop* v. *Chambre*, 3 C. and P. 55; *Johnson* v. *The Duke of Marlborough*, 2 Stark. R. 313; *Henman* v. *Dickenson*, 5 Bing. 183; *Taylor* v. *Mosely*, 6 Carr. and Payne 273; and numerous others. In *Knill* v. *Williams*, 10 East 431, it appeared affirmatively that the alteration was made by the agreement of the parties; but the note was not allowed to be given in evidence, for the want of a new stamp. The often-quoted language of the *English* Courts, that the plaintiff must prove the alteration to have been made before the instrument was executed, means no more than that he must prove his case. It usually has no

reference to the burden of proof between the parties, as to
who made the alteration.

Recent decisions in *New-York* are not uniform. In *Smith* v. *McGowan*, 3 Barb. S. C. R. 404, it was held that the fact that a deed was written in two different kinds of ink, and that the grantor's name was written over an erasure, was not sufficient to exclude it as evidence, nor was it *prima facie* evidence of an alteration, and that it might be left to the jury, with such explanations as the party offering it might give, either before or after it was read. But in *Tillou* v. *The Essex Marine Insurance Co.*, 7 *id.* 564, it was said that where an instrument is offered in evidence, the Court is to decide upon its admissibility, particularly in the case of an altered paper, when the alteration makes it void in law; and where the party producing it offers evidence to show a *prima facie* explanation of the mutilation, the question should be submitted to the jury. And again, in *Acker* v. *Ledyard*, it was said that an altered deed must be explained by a party offering and claiming under it.

A sealed note was found among the papers of the payee, after his death, with the seal carefully cut out, leaving only sufficient to show the character of the instrument. It was held that the destruction of the seal must be considered as the act of the payee, and that it vitiated the note. *Porter* v. *Doby*, 2 Rich. Eq. 49.

There are numerous other authorities which hold that the presumption of law is, that an alteration is made before or at the execution of the instrument, among which are *Gooch* v. *Bryant*, 1 Shepley 386; *Crabtree* v. *Clark*, 7 *id.* 337; *Wickes* v. *Caulk*, 5 Harr. and J. 36; *Cumberland Bank* v. *Hall*, 1 Halst. 215; *North River Meadow Co.* v. *Shrewsbury Church*, 2 N. J. 424; *Beaman's Administrator* v. *Russell*, 20 Vt. 205; and *Doe d. Tatham* v. *Catamore*, 5 Eng. Law and Eq. R. 349; which last occurred in the *Queen's Bench* in 1851. The alteration appeared in a lease. Lord C. J. *Campbell* distinguished between deeds and bills of exchange, and quoted from Co. Litt. 225 *b*, that anciently it had been said that if a deed appeared to

be razed, or interlined, in places material, the judges held it void, but in later times they had left it to the jury to say whether the alteration was before delivery; and referring to a note upon this passage in *Hargrave* and *Butler's* edition of *Coke* upon *Littleton*, where it is laid down that the interlineation is to be presumed if the contrary is not proved, the Court said that it could not be altered after it was executed without fraud or wrong, and the presumption was against the fraud or wrong.

The alteration of a paper is a question of fact for the jury to try, and we know of no rule, founded in reason, which makes the eyes of the Court any better than those of the jury, upon an inspection of the instrument. The appearance of the alteration, when compared with the other parts of the instrument, may of itself be sufficient to condemn it, and the motive for the change may be deduced from its nature, and the effect upon the party, as being for or against his interest. These circumstances are not to be excluded, and they should be weighed by the jury, with all other evidence either party may offer. The motive in some cases may be apparent, but in others it may not. In general it would scarcely be supposed that a party having custody of a deed would choose to injure his own title by tampering with it; but he might have such inducement. In the present case, the defendant having received a deed for the assignment of a patent, and having become dissatisfied with his purchase, and wishing to defeat a recovery upon his promise to pay for it, might have a motive to mutilate or destroy the deed, and thereby show that his purchase was without consideration. Nothing of the kind appears here. The case is supposed only as an illustration; and the same might occur in respect to a conveyance of land.

We are of the opinion that where the alteration is of such a character as to defeat entirely the operation of the instrument, for any purpose, as in the case of the erasure of the signature and seal to a deed, or other instrument, so that, admitting all to be true that appears upon the instrument, when produced, it would be void in law, it

should be explained in the first instance, before it should be permitted to go to the jury. In other cases, the instrument should be given in evidence, and should go to the jury, upon the ordinary proof of its execution, although an alteration may appear in it, leaving the parties to such explanatory evidence as they may choose to offer. But if there is neither intrinsic nor extrinsic evidence as to when the alteration was made, the presumption of law is, that it was made before or at the execution of the instrument.

There are some considerations of public policy which seem to us to have weight in inducing this conclusion. With us, the business of conveyancing does not pertain to the legal profession exclusively. Where estates are large, and lands are held by the comparatively few, titles are seldom passed without great consideration, while with us, the ownership of lands in fee is almost universal, and real estate is, like merchandise, a subject of traffic. Deeds are drawn by justices of the peace, and by almost any person of ordinary intelligence, who will observe usually much less accuracy and precision than where the business is in the hands of a branch of the legal profession. The same may be said in regard to all sorts of traffic so common among our people, in which notes, agreements, and other contracts are executed with little regard to professional accuracy. To declare all these *prima facie* fraudulent and void, we are satisfied would be generally indulging in a presumption against the facts, and that it would produce more injustice than to hold them valid. We are of the opinion that the deed was properly admitted in evidence, notwithstanding the erasures were unexplained.

For the purpose of showing that *Huff* and *Myers* had not obtained a patent for the alleged improvement, the Circuit Court admitted in evidence, against the plaintiff's objection, a certificate of the commissioner of patents, under his seal of office, stating that no patent for an improvement in churns had been issued to Messrs. *Huff* and *Myers*. This, we think, was erroneous. If there is any statute authorizing that mode of proof, we have not been able to find it, nor is any referred to by counsel. We are

aware of no rule of law which authorizes a public officer to certify what does not appear in his office, for the purposes of evidence. His deposition should be taken, to prove that upon diligent search the fact did not appear.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*W. March*, for the plaintiff.

*J. S. Buckles*, for the defendant.