EDWARD P. SMITH *vs.* AMON RICHARDS AND ANOTHER.

An action on the case was brought by a girl under age, by her next friend, in which the declaration alleged that the defendant, fraudulently, and with the intention of getting her within his power for purposes of prostitution, she being then but fourteen years of age, destitute, without relatives, and in the care of a charitable society in New York, represented to her, and to the persons who had her in charge, that he wanted her to go to his house in this state, and live in his family as a servant, and that he was a suitable person to take charge of her for that purpose; and that, with the advice of her friends, she came to his house with him for the purpose, and that, while she was living in his house, the defendant, by taking advantage of her ignorance and dependence and want of friends and of her fear of him, persuaded her to submit to carnal intercourse with him, and that he thus debauched her and ruined her character and prospects in life. While the suit was pending a compromise was effected, under which the suit was withdrawn and the present defendants gave a note to the person acting as next friend of the girl. A criminal prosecution had also been instituted against the defendant for the same acts, which soon after the settlement of the civil suit was withdrawn by the state attorney. In a suit on the note, in which the defendants contended that the note was void, on the ground that the settlement of the criminal prosecution was a part of the consideration, and that it was also without consideration, because the civil action was, as a matter of law, unsustainable, it was held, on a motion of the defendants for a new trial:

1. That if the settlement of the criminal prosecution was a part of the consideration of the note, it was void.

2. But that the court having so charged the jury, the defendants were not entitled to a further charge, that if the plaintiff had in any manner induced the defendants to believe that the prosecution would be withdrawn if the note was given, and the defendants were thereby led to give the note, the note was void.

3. That if the action compromised was unsustainable in law, yet the law would not conclusively presume that the plaintiff knew it to be so, the rule that every person is supposed to know the law having no application to the case.

4. That that action was sustainable in law, and that the declaration would have been held good on demurrer.

5. That the note, being given after the seduction, and as a compensation for the injury caused by it, was founded upon a valid consideration, independently of the compromise of the suit.

One *G* had taken an active part in behalf of the defendant in the original suit in effecting the compromise. Held that conversations relating to the compromise, between the plaintiff and *G*, when the defendants were not present, might be proved by the plaintiff, for the purpose of showing the object for which the note was given.

For the purpose of proving that there was no vote of a certain character on the records of an incorporated society, the secretary of the society was called upon, who testified that there was no such vote to his knowledge. Held that the evidence was admissible.

ASSUMPSIT upon the following note :—

"Wethersfield, Conn., April 23, 1855. After eight months, with interest, we jointly and severally promise to pay Edward P. Smith or order four hundred dollars. AMON RICHARDS, OLIVER RICHARDS."

The declaration in one count alleged the note to have been given for a valuable consideration, and in another "as a part payment of the amount agreed to be paid by way of compromise for the withdrawal of certain suits and for the discharge of damages claimed therein, then pending in the United States Circuit Court for the District of Connecticut, in which the said Smith, as guardian of certain minors, was plaintiff, and one Samuel Richards was defendant."

It appeared on the trial that the plaintiff, in September, 1854, acting as guardian and next friend of two girls named Julia Liddy and Sarah Campbell, minors, both of the city of New York, had brought two suits in behalf of them severally, against one Samuel Richards, of Wethersfield, in this state, before the Circuit Court of the United States for the district of Connecticut, for the fraudulent seduction and debauchery of the girls, under peculiar circumstances, and that the note now in suit was given, with one hundred dollars in cash, by the defendants, who were the brothers of the said Samuel, in settlement of the suits. There were also two criminal prosecutions pending at the same time against the said Samuel for the same acts, which were soon after withdrawn, and one question made in the case was, whether the settlement of the criminal suits was not a part of the consideration of the note, and the note therefore void. The defendants also claimed that the suits instituted by the plaintiff, as guardian and next friend of the girls, were in law unsustainable, and that if they were so, the settlement of them could not constitute a valid consideration for the note, and that if they were in law unsustainable, the plaintiff was conclusively presumed to have known it.

The defendants filed four special pleas, which are so fully stated in the opinion of the court that it is unnecessary to

detail them here. The jury rendered a verdict for the plaintiff, and the defendants moved for a new trial for sundry errors in the rulings and charge of the court, all of which are sufficiently stated in the opinion. They also moved for a new trial for a verdict against evidence.*

* As the declarations in the suits referred to were prepared with care, and with reference to the objection here made, and as the court expresses the opinion that they would have been held good on demurrer, it may be of interest to the profession that the form be preserved. They were essentially alike in the two cases. One of them was as follows:—

Then and there to answer unto Julia Liddy, a minor, under the age of twenty-one years, of the city, state and district of New York, and a citizen of said district, who sues by her guardian and next friend, Edward P. Smith, of said city, state and district of New York, and a citizen of said state and district, in a plea of the case, whereupon the plaintiff declares and says, that the defendant, on the 1st day of January, A. D., 1850, and for many years before, resided in the town of Wethersfield aforesaid, where he kept house, and during all that time he had been and was in the practice of procuring young female children, under the pretense of employing them to work in his family, to come and live with him in his said house for the purpose of seducing them and keeping them in his said house for purposes of debauchery and prostitution. And the plaintiff avers that the said Julia, shortly before said 1st day of January, 1850, being then about fourteen years old, had been deprived by death of both her parents and of all her brothers and sisters, and was at said time without any near relatives, and was entirely destitute of means of support and in a condition of helplessness and dependence, and had been taken under the protection of certain charitable people in the city of New York, on whom she relied for advice and assistance, and who were at said time desirous of finding a place for her in some respectable family, where she could be well and kindly taken care of and properly instructed and educated in the principles of morality and religion, and where she could make some return for such care, support and instruction by her services in such family, but were so particular as to the character of the person and the family to which she should be intrusted, that they would not place her with any person who could not bring satisfactory recommendations as to character and fitness for taking such charge; to all which the said Julia agreed, and was desirous that said persons who were so befriending her should in her behalf procure such a place for her to live. And the plaintiff says that all these facts were known to the defendant, and that he, wickedly conceiving the idea of procuring the said Julia to live with him in his said house in a state of prostitution, on said 1st day of January, 1850, applied to said friends of the said Julia in said city of New York, and fraudulently and deceitfully represented himself to them to be a man of respectable character, and that he was desirous to procure such a girl as the said Julia to live in his family as a servant, and that his family was a suitable one for such a girl to enter and live in, and that she would there be properly brought up, and did also then and there fraudulently present to the friends of the said Julia false and fraudulent testimonials that he was a proper man for such a charge, and did then and there prevail upon the said friends of the said Julia to consent that she should go home with him and live in his family in the manner requested by him, and did then and there

*Welles* and *C. Chapman*, in support of the motion.

1. The actions brought in the circuit court by the girls Liddy and Campbell, were clearly unsustainable in law. The plaintiffs were the seduced party, and the actions were brought to recover damages for being seduced. There is no precedent for such an action, and the authorities are decisive against it. 3 Chitty's Blackstone, 142, note 32. 3 Stephen's Com., 532, 3. *Paul* v. *Frazier*, 3 Mass., 71. If the suits were in law unsustainable, then the compromise of them did not constitute a valid consideration for the note. The compromise of a merely doubtful claim may be a good consideration, but not that of a claim clearly unfounded. *Wade* v. *Simeon*, 2 Mann. Grang. & Scott, 548. *Goodall* v. *Dolley*, 1 T. R., 712. *Cabot* v. *Haskins*, 3 Pick., 83. *N. Hamp. Sav. Bank* v. *Colcord*, 15 N. Hamp., 119. *Gould* v. *Armstrong*, 2 Hall,

---

by said representations induce the said friends of the said Julia to advise her to go home with him and live in his family as aforesaid. And the plaintiff says that they did accordingly, and in consequence of said representations, advise the said Julia to go home with the defendant and become a member of his family, and the said Julia thus advised did, in consequence of said representations, assent thereto, and did then and there immediately leave her said friends, in company with the defendant, and under his care did come to his said house in said Wethersfield, and did there at once enter upon her duties as a servant in the family of the defendant. And the plaintiff says that the defendant, in soliciting the said Julia of her said friends, and making said misrepresentations, and in procuring the said Julia thus to go home with him and live in his said family, purposed and intended to bring her within his power, that he might seduce her and keep her for purposes of prostitution, and that in making the application to her said friends as aforesaid, and in making the representations aforesaid, he was deceitfully and wickedly laying a plan to seduce her and effect her ruin. And the plaintiff says, that the said Julia had until then lived in habits of virtue, and had never been guilty of the vice of unchastity, but that after she had entered the family of the defendant and while she was living therein, owing to her extreme youth, and ignorance of the world, and want of friendly counsel, and especially owing to her state of dependence and her subjection to and fear of the defendant, she was induced by the arts, persuasions and commands of the defendant to consent that he might have carnal intercourse with her; and the defendant did at his said house and soon after the said Julia entered his family, viz: about the 1st day of February, A. D., 1850, seduce and debauch her, and have carnal intercourse with her. And so the plaintiff says that by his fraudulent representations aforesaid, and by his deceit and falsehood and by his said imposition upon the said Julia, the defendant has effected her seduction, and involved her in disgrace, and in loss of virtue and of character and of peace of mind, and has greatly injured her health,

269. *Silvernail* v. *Cole*, 12 Barb., 685. *Cook* v. *Bradley*, 7 Conn., 57. *North* v. *Forest*, 15 id., 405. 1 Parsons on Cont., 363, note *w.* Id., 366, note *c.* We do not regard it as important whether the plaintiff knew that the suits were unsustainable; the real question is, was there a valid cause of action. But if his knowledge was important, the law conclusively presumes that he knew what the law was. Every man is held to know this. The first plea in this case was copied verbatim from the case of *Wade* v. *Simeon*, supra, where it had stood the test of a demurrer.

2. The second plea sets up that the note was given in part to compound a criminal prosecution. We asked the court to instruct the jury that if the plaintiff held out to the defendants the belief that the criminal prosecution would be withdrawn if the note was given, as an inducement to the giving of the note, and it was given under that inducement, then the note would be void. The court refused this instruction. We were clearly right in this position. 1 Chitty Crim. Law, 4. *Corley* v. *Williams*, 1 Bailey, 588. *Badger* v. *Williams*, 1 D. Chipman, 137. *Mattocks* v. *Owen*, 5 Verm., 42. *Dixon* v. *Olmstead*, 9 id., 310. *Hinds* v. *Chamberlin*, 6 N. Hamp., 225. *Jones* v. *Rice*, 18 Pick., 440. *The People* v. *Buckland*, 13 Wend., 592. Chitty on Cont., 524. 1 Parsons on Cont., 380. Even an agreement, the natural effect of which is to induce public officers to neglect their duty, is void. Chitty on Cont., 525. *Ayer* v. *Hutchins*, 4 Mass., 370. *Denny* v. *Lincoln*, 5 id., 385. *Churchill* v. *Perkins*, id., 541.

3. The evidence of the plaintiff's conversation with Gilbert was inadmissible. He was a third party, and the conversation was not in the presence of either of the defendants.

4. The verdict was against the evidence.

*T. C. Perkins* and *C. E. Perkins*, contra.

ELLSWORTH, J. If this cause had gone to the jury on the general issue, as we think it should have done, instead of being involved in special pleadings, much of the argument here, if not of the controversy below, would have become un-

necessary, and the danger of a mistrial would have been very much diminished. Perhaps, however, justice has been done. At all events we must take the record as we find it, and if there is error must correct it, and send the case back for another trial.

The action is on a note of hand, given by the defendants in consideration of a certain compromise effected by the plaintiff in his own behalf and that of others, with one Samuel Richards, a brother of the defendants. To this action the defendants have pleaded four pleas. They say, first, that there were pending in the circuit court of the United States two certain actions brought by the plaintiff as guardian of Julia Liddy and Sarah Campbell, against said Richards, for frauds and wrongs by him committed upon them, to their great dishonor and injury ; which actions the defendants say were really insustainable in law or equity, and of which the plaintiff had full knowledge; and that said note was given in consideration of the plaintiff's forbearing the further prosecution of said actions and for no other cause or consideration. In the second plea they aver that the said Richards was prosecuted criminally, at the instance and procurement of the plaintiff, for certain crimes and misdemeanors alleged to have been committed by him against said Julia and Sarah ; and that said note, besides the payment of $100 in money, was given in consideration that the plaintiff would consent that said prosecution should be abandoned, and, so far as depended on him, discontinued. The third plea is made up of the facts stated in the first and second plea combined, and needs no further notice. The fourth plea avers that while said civil actions were pending in the circuit court aforesaid, the plaintiff represented that he was guardian to said Julia and Sarah, and as such settled said suits, and all claims in their behalf, or of either of them, upon said Richards for said alleged frauds and wrongs, and took from the defendants, besides said $100, the said note in satisfaction ; while in fact he was not guardian to either said Julia or Sarah, and had no authority to make said compromise or to discharge said Richards from said claims, and did fradulently impose upon these defendants in getting said note.

The pleas are severally denied, and issue joined to the jury. On the trial of the first plea, the plaintiff denied that he had 'represented himself to be the guardian of said Sarah, but only represented himself as her next friend ; and insisted further, that there were other and different considerations for said note than the forbearance of the plaintiff to prosecute further said suits ; and offered evidence to prove that he was guardian to said Julia and next friend to said Sarah, and was their duly authorized agent, and the agent of all persons, societies, corporations and institutions which were entitled to the custody or services of said Julia and Sarah, to settle and adjust all claims for damages and services which said Julia and Sarah, or their parents or guardians or any persons, corporations or societies might have against said Richards for his said conduct ; and that in the settlement he did compromise and release all claims and demands against said Richards which they or any of them might or could have ; and that this compromise and release was the consideration of the note, as well as the withdrawal of the suits in the circuit court. This issue was found in favor of the plaintiff, and this finding of course puts an end to all question upon this issue, unless the evidence was left to the jury upon some erroneous instruction on the part of the court. But we do not discover any such error, certainly none of which the defendants can complain, however it might have been with the plaintiff, had the verdict been the other way.

Let us examine the instructions given, and see what they were. The defendants asked the court to instruct the jury, as matter of law, that the two suits in the circuit court could not be sustained in law or equity, and that the withdrawal of them by the plaintiff, (he knowing that they could not be sustained,) would not be a good and valid consideration for the note. No evidence however was offered to prove such knowledge in the plaintiff in fact ; but the defendants insisted that as a principle of law the plaintiff was bound to know, and must be held to know, that the actions could not be maintained.

Now, it appears to us that this claim of the defendants, if well founded, could not be of the least importance in the result ; for the judge charged the jury that however this

Smith *v.* Richards.

might be, assuming therefore the law to be as claimed, yet if there were other and different considerations for the note besides the forbearance and withdrawal of the two suits in the circuit court, and the other facts claimed by the plaintiff in answer to said plea were substantially proved, the first plea of the defendant was not sustained, and the verdict must be for the plaintiff. There is perhaps some obscurity in this part of the charge, but on the whole we think it was well enough understood, and, if so, it is obvious that there is no ground for complaint.

Besides, if we were to examine this question of law, we can not assent to the correctness of the defendants' claim, that the plaintiff was bound to know the law herein at his peril. For some purposes, it is true, a man can not plead ignorance of the law, especially as an excuse for not doing what the law requires of him, or for doing what it forbids. But nothing can be further from the truth than that this maxim is applicable in all cases. If so, what becomes of *bona fide* compromises, settlements and amicable arrangements, the very object of which is to avoid the uncertainty of the law, when perhaps there is no uncertainty as to facts? It could never be endured that *bona fide* arrangements of this kind should be held to be of no validity. Besides, if the plaintiff is held to know what the law is in this case, so are the defendants, and it follows that the defendants and their brother Samuel have voluntarily given up this defense, if they could have made it successfully in those actions, preferring to avoid the publicity of a trial, (so little creditable to those concerned,) rather than encounter the hazard of defeat and the further hazard of aggravated damages. Had the defendants persevered in their choice to the present time, we think it would have been far better for them than this renewal of the controversy, and placing on the records of the court a transaction which will be read and known while courts and records shall endure.

Nor are we at all satisfied that the law is so, that the actions in the circuit court would not have been maintained, if the facts could have been fully proved. Why might they not? It is said they were actions for seduction, and that a

person seduced can not maintain an action in her own favor to recover damages. This is the general law, we suppose, in a simple case of seduction, but there may be circumstances connected with the act of such a character as to take the case out of the general rule, and where such circumstances in fact exist, courts may be presumed to be ready to lay hold of them for the purpose of punishing an artful seducer and to indemnify betrayed innocence. Thus the courts sustain actions by a parent or guardian for an unlawful entry upon the premises followed by seduction, or for loss of service. The seduced female, it is true, is not allowed to bring suit in her own name, because she is a *particeps criminis*, and can not be heard in her complaints in court, though forever ruined through the insiduous arts of the most consummate villainy. Be it so. Let the rule of law remain with the qualifications above stated. Perhaps it is the part of wisdom and safety that it should be so, lest by changing it we should unwarily put it in the power of the female sex to become seducers in their turn, and to prefer false claims for a pretended violation of their chastity.

But these defendants can not be allowed to avail themselves of any such rule of law in this case, for two reasons; and we do not regret that it is so. First, the note in question was given after the seduction, and it has always been held that such a note is good, on the idea, we presume, that it was in honor and justice due as some indemnity for the loss of character, certainly so in view of the seducer, and as a means of future support to the woman he has ruined. And in the next place, we are strongly inclined to the opinion, that those two actions in the circuit court would have been sustained on a demurrer or motion in arrest of judgment, by reason of their peculiar facts. Let us see if it is not so. Those declarations state that Samuel Richards, living in Wethersfield, in this state, had been in the practice of procuring young girls, under the pretense of employing them in his family, for the mere purpose of seducing them and keeping them for purposes of debauchery and prostitution; that said Julia and Sarah, being about fourteen years old, without parents or relatives or the means of support, were

living under the protection and care of certain charitable societies in New York on whom they relied for advice, and who were seeking for them, with their approbation, places in respectable families, where they would be well and kindly taken care of and instructed in the principles of morality and religion,—that said Samuel Richards, knowing these facts, fraudulently and deceitfully, and with false testimonials of his character, represented himself to said Julia and Sarah and said benevolent societies to be a person of good character and desirous of obtaining said Julia and Sarah to take with him to his said family in Wethersfield to be employed as servants, and that he would there care for them and instruct them in what was useful and important,—that, under these representations and testimonials, he obtained the consent of said Julia and Sarah and said societies, and thereupon took and carried them away from New York, and placed them in his family as servants to perform the ordinary duties of that relation,—that nevertheless he did this to get possession of said Julia and Sarah for the purpose of prostitution and debauchery, and they being in his power, in his house, remote from friends and unable to consult with them, of tender and inexperienced years, in a condition of dependence, and in fear of said Samuel, yielded to his arts, persuasions and commands, so that he did in fact seduce and debauch them, and involved them in perpetual disgrace, and robbed them of all future means of gaining a support and livelihood.

Now, if fraud and damage are enough to sustain an action on the case, which has been the law ever since and before the case of *Paisley* v. *Freeman*, 3 T. R., 51, here is enough stated, one would think, to sustain the actions in the circuit court; and the defendant in those actions must have been suspicious that it might be so, as it would have been very easy for him to have brought the question to the test. But he declined to do so, preferring an amicable adjustment to the consequences of a trial.

The declaration in those suits, in a word, stated that through fraud and deceit said Richards had obtained the possession of those little girls, carried them to Wethersfield, away from

their friends and protectors, out of a jurisdiction where they belonged, into another where they did not belong, and there, by menaces, and by taking advantage of their fear and sense of dependence and desolateness, induced and constrained them to unite with him in acts of prostitution and debauchery, cutting themselves off forever from the sympathy and counsels of their friends in New York, and of the means of obtaining a virtuous livelihood thereafter. We think this is enough to sustain an action in their behalf. If Mr. Richards was in fact innocent of the charges, he owed it alike to himself and to his brothers to spurn the gross imputations cast upon him and defend his character against these attacks, whether made against him in a criminal or civil form of action.

Under the second issue the defendants offered evidence to prove the allegations contained in the second plea, and claimed that the note was tainted and made void on account of the facts therein stated. The court charged the jury as to the effect of these facts in accordance with the defendants' claim ; and so far certainly the defendants have no ground of complaint. In the latter part of their request to the court for its instructions to the jury on this issue, the defendants ask the court to charge the jury, " that if the plaintiff in any manner induced the defendants to believe that said criminal suits would be withdrawn and abandoned if said note was given and said money paid, and the defendants were thereby led to give the note, the same was void." The facts here supposed fall quite short of the settlement of a criminal prosecution by agreement, which is the point of the objection if there be any. If such a settlement had been made, it would, we admit, be a valid objection to the note, as the court had explicitly told the jury. The jury must have found that the note was given in settlement of damages and for loss of services, and if the defendants did entertain the hope, or even the belief, that this step would somehow lead to an abandonment of the prosecution by the state attorney, that expectation can have no effect upon the character of the note. And further, were it important, this particular objection does not appear to us to be embraced in the defendants' plea or in the issue joined to the jury.

No question arises upon the third plea distinct from what arises on the first and second, which we have already considered ; and no question can arise on the fourth, for the court charged as the defendants requested.

In the progress of the trial, the defendants introduced one Gilbert, who testified that he was present when the note in suit was given, and that he was desirous of bringing about the compromise, and took an active part therein.   On the cross examination he said he had several conversations with said Smith, at Hartford, and in the cars going to Hartford, which conversations the plaintiff claimed, and the court found, related to and terminated in the settlement of which the note constituted a part.   To this evidence on the cross examination the defendants objected, because the conversations were not had in the presence of the defendants.   The court very properly overruled the objection.   This was not an attempt to prove a fact by hearsay testimony, or by what a stranger said in the absence of the party, but to show the character of the note—in what it originated and on what consideration it was founded.   Certainly this inquiry was entirely proper, and the testimony in its nature admissible, whether the defendants were present or absent.

The only thing remaining for consideration is the objection taken to the testimony of Mr. Brace, the secretary of the Children's Aid Society.   He testified that there was not, to his knowledge, any vote on the records of the society disapproving of the conduct of the plaintiff, Mr. Smith, touching the suits in the circuit court.   Here was a negative.   How could it be proved otherwise than by parol evidence ?   Had the records been present in court and examined, it would only appear that there was no vote to be found ; and why may not an officer of the society, familiar with its records, and perhaps the keeper of them, testify that he has never seen any such vote ?   Certainly he would have to say thus much, if his testimony had been taken by deposition in New York, or if he had the book now before him and before the jury.   We think he may as well examine the records in New York as here, whether in the presence or in the absence of the jury.   It is

negative evidence at the best. Had it been affirmative, had the fact to be proved been a vote of the society recorded on its books, a copy of the record would doubtless have been the best evidence of the existence of the vote and of its terms, and must have been produced on the trial if called for. The absence of any such recorded vote from the records of the society is the best proof of the non-existence of such a recorded vote ; a fact that of necessity depends upon there not being any such record ; and a fact that the keeper of the record can testify to as well as any body else. This kind of evidence is of frequent occurrence in our courts of justice ; as the testimony of a town clerk, that he has examined and can find no record of a deed in the books in his office ; or of the cashier of a bank, that he has examined the books of the bank, and can not find any entry of a note said to have been discounted at the bank. This principle is too familiar to need any further illustration.

We are asked further to grant a new trial for a verdict against evidence. The evidence is fully recited in the motion, and has been minutely commented upon by counsel. On a careful review of this testimony we are inclined to think the verdict correct as it stands. Some little doubt perhaps might arise with regard to the exact character of the consideration of the note, whether it was or not tainted with the illegality set up in the defendants' second plea in bar. But the testimony is not altogether clear for the defendants on this point. It is certainly essentially contradicted, and the weight of the proof is with the plaintiff. As we have said, we are most of us satisfied that the verdict is correct as the jury have rendered it, and certainly it is not so much against the weight of evidence in the minds of any of us, as that we can say that the jury did not take a fair, dispassionate and impartial view of the evidence before them, which is all they were bound to do.

The salient points of this case are such that we do not feel ourselves called upon to set aside the verdict unless the path of duty is very plain. We can not consistently encourage attempts to avoid the payment of a note given for the benefit of

females who have been seduced. Such a note, in our judgment, had better be paid with as little publicity as possible.

On the whole, then, we do not advise a new trial.

In this opinion the other judges concurred. ·

New trial not advised.