IN RE ESTATE LUTHER E. COLTON, Deceased.

**Evidence:** PROOF OF NONEXISTENCE OF A JUDGMENT. An attorney who has examined the judgment records of a clerk of court may testify that a particular judgment is not shown by such records.

**Presumption as to residence.** Where the residence of a deceased person is shown to have been established in a certain county, it will be presumed to have continued at that place until the contrary is shown.

**Marriage:** PRESUMPTION OF VALIDITY. Where a person, since deceased, deserted his wife without ground for divorce, it will not be presumed that he moved from the county of his residence in which no decree of divorce is shown to exist or that he procured a decree on false testimony, for the purpose of sustaining a subsequent marriage.

**Same.** A presumption exists in favor of the validity of a second marriage, but in a proceeding between rival claimants to the rights of a surviving widow of a deceased husband, this presumption is overcome by proof of a former marriage and that the first wife was still living and no decree of divorce was of record in the county of her residence or that of decedent.

**Evidence of divorce.** Proof that a deceased husband procured a divorce from his third wife was immaterial on the question of whether he was legally separated from his second wife.

*Appeal from Dallas District Court.*— HON. EDMUND NICHOLS, Judge.

WEDNESDAY, FEBRUARY 7, 1906.

CONTROVERSY as to who is entitled to share in the estate of Luther E. Colton, deceased, as his widow — Eliza A. Col-

ton or Frankie Colton. Decree was entered declaring the former to have been his lawful wife, and the administrator of the latter appeals.—*Reversed.*

*Miller & Russell,* for appellant.

*E. W. Dingwell,* for appellee Colton.

*White & Clarke* and *E. E. Byrum,* for appellee Mattausch.

LADD, J.— Luther E. Colton died intestate, October 30, 1903, leaving forty acres of land and personal property worth about $1,000. He was married to Eliza A. Shaw on the 4th day of September, 1886, and lived with her up to the time of his death. She applied for an allowance for support March 4, 1904, the consideration of which was deferred, owing to a similar application by Frankie Colton April 12th following and a claim of ownership of all exempt property and an undivided one-third of the estate. The pleadings were such that the issue as to which of these women was the lawful wife of Colton at the time of his death was raised. Prior to the trial Eliza died, and the administrator of her estate, Etta Mattausch, filed petition claiming the allowance sought by her decedent. N. E. Colton, administrator of the estate of Luther E. Colton, denied knowledge or information sufficient to form a belief. That Frankie Boon was married to the deceased at Parsons, Labette county, Kan., December 1, 1875, is conclusively established by the evidence. Indeed, this is conceded. She was his second wife. They remained there about two weeks, when he left for Des Moines, and she followed him in about two months, and they lived there more than a year. A child was born, and shortly afterwards she returned to Parsons on a visit. According to her story this was at his instance, and after a brief stay she wrote him of her readiness to return, to which he responded by saying he did not intend her to come

back, and if she did she would not find him, and either in this or another letter he offered her money if she would not come and trouble his folks. As she was without means she did not return to him, but has resided in Labette county of that state ever since. She has neither applied for a divorce nor married again. They corresponded for a couple of months. She was willing to live with him whenever he wished, up to the time of his marriage to Agnes Masters in 1878, with whom he appears to have lived seven years. Through correspondence with friends she learned of this marriage, also of that to Eliza, and, though claiming to be the wife of Colton, she made no protest against the relationship assumed with these women. This omission is somewhat explained by her lack of means and distance from the transactions. No notice of any suit was ever served on her, and the principal issue to be determined is whether the presumption which the law raises in favor of the last marriage has been overcome by the evidence tending to show that the bonds of matrimony between Frankie Colton and deceased were never dissolved.

1. An attorney testified that he had examined the court records of Labette county, Kan., diligently, and found no decree therein dissolving the marriage of deceased with

1. EVIDENCE: proof of nonexistence of a judgment.

Frankie Colton. Another attorney gave like testimony as to the court records of Polk and Dallas counties, in this state. The administrators moved to strike this evidence, because incompetent, and on the ground that this could be proven by the custodians of the records only. Our statute authorizes proof of judicial records by duly certified copies. Sections 4644, 4645, Code. These must be furnished upon tender of statutory fees. Section 4638, Code. There is no statute, however, authorizing the absence of any particular decree from the records to be proven by the certificate of the officer having the records in his custody, and, in the absence of such a statute, a certificate to the effect is not admissible in evi-

dence. Wigmore on Evidence, section 1678. Of course, the best proof would be the introduction of all the records in evidence. But this would be impracticable, and the testimony of some one competent to and who has made a diligent search is admissible. The duty to make such diligent search is not imposed by statute upon any officer. An examination of this kind may require much time, and the clerical force in the several county offices of this state is limited by law. The officer is at liberty to decline to do such work. Moreover, the records are open to public inspection, and any competent person may ascertain the facts quite as well as the custodian of the books. Ordinarily the clerk of the court is not an attorney, and is not as competent to ascertain whether a particular decree is contained in the records as one learned in the law. While such proof may be made by the custodian of the records, no good reason has been suggested for saying that his testimony is better evidence than that of anyone else knowing the facts, and, as the records are open to public inspection, no question of public policy is involved. The only decision cited to the contrary is *Sykes v. Beck* (N. D.) 96 N. W. 844. There the testimony of an attorney to what the records of the county commissioners did not contain was declared not to be the best evidence; " that is, it is not the kind of evidence required to prove the facts, which are required to be officially recorded, do or do not exist." This was because the witness was not the official custodian of the records. The decision appears to have been planted upon the following authorities: 2 Jones on Evidence, section 556; *Bullock v. Wallingford*, 55 N. H. 619; *Stoner v. Ellis*, 6 Ind. 152; *Smith v. Richards*, 29 Conn. 232; and *Burton v. Driggs*, 20 Wall. 125 (22 L. Ed. 299). These cases merely hold that proof of the absence of any matter from voluminous records cannot be established by the certificate of the custodian, but must be proven by the testimony of a witness, who is subject to cross-examination. In the text of Jones on Evidence it is said " the

proper mode is not by statements in official certificates, but
by the testimony of the officer." This is proper, but
whether the same proof may be made by some one else
equally competent does not seem to have been considered by
the author, as in neither *Bullock v. Wallingford,* 55 N. H.
619, nor *Stoner v. Ellis,* 6 Ind. 152, cited in support of the
text, was the point determined. In the former, the court
held a certificate by the assistant commissioner of patents
that upon diligent search of the records it did not appear
that a certain patent had issued was not admissible. Each
of the three judges delivered opinions, one of them only sug-
gesting that the custodian should have been called as a wit-
ness. Precisely the same question was determined in Stoner
v. Ellis. In *Smith v. Richards,* 29 Conn. 232, the testi-
mony of the secretary of a society that upon examination
of its records he did not find that a certain vote had been
taken was held admissible. Burton v. Driggs, *supra,*
merely states the established doctrine that when it is nec-
essary to prove the result of voluminous facts or the exami-
nation of many books and papers, and the examination can-
not conveniently be made in court, the results may be proven
by a person who made the examination. Sykes v. Beck is
without support in the authorities cited therein, and does
not meet our approval. We think the negative sought to
be established may be proven like any other fact; that is,
by one possessing the necessary information. That an attor-
ney or abstracter of experience is quite, if not more, cap-
able of ascertaining whether a particular record exists, as
those ordinarily having custody of the records in the of-
fice of the clerks of court, or of other county officers, is a
matter of common knowledge, and, when qualified by having
made diligent search, his testimony is not different in grade
than that of the custodian of the records, and is alike ad-
missible for what it is worth.

II.   The evidence that no divorce had been obtained
by either party in the counties mentioned is undisputed. It

is urged, however, that deceased may not have resided, all
the time after Frankie Colton left him for
2. PRESUMPTION
AS TO RESIDENCE.
Kansas, in Polk and Dallas counties. She returned in the spring of 1877. He then lived in Polk county, and resided there in the fall of that year, according to the testimony of an aunt by marriage, who was acquainted with him from then until his death. Several months prior to his marriage to Agnes Masters, his third wife, in 1878, he had his two children by his first wife kept in Des Moines by Eliza, who subsequently became his fourth wife, then Mrs. Tubbs. He lived with Agnes seven years, and was visited at one time at their residence in Des Moines by his aunt. After marrying Eliza he lived in Des Moines five years, and then moved on the premises in controversy, where he continued until his death. It will be observed that direct proof that he resided in Polk county for all the time — that is, every day, month, or year — up to his removal to Dallas county was not adduced. For all that appears, he may have been absent therefrom. But, having established his residence in that county, it is presumed to have continued there until the contrary was shown. 22 Am. & Eng. Ency. of Law (2d Ed.) ; 14 Cyc. 858. There was no evidence that he had lived elsewhere, and the presumption was somewhat aided by the testimony of the aunt that he lived in Des Moines from the fall of 1877 until he moved to Dallas county, though this was based upon being at his residence but once, and the fact that, though she did not meet him often, she heard from him " once in a while " as being in that city.

It may be that this presumption indirectly conflicts with the presumption that a divorce was obtained, raised in support of the validity of the last marriage. The latter
is greatly weakened, however, by the fact that
3. MARRIAGE:
presumption
as to validity.
deceased had no legal ground upon which to base a suit for divorce. Frankie Colton returned to Kansas at his instance, and her offer to return

was spurned. He, not she, was guilty of desertion. The record is without a hint at any other cause upon which he might have based an action, and it will not be presumed, in order to sustain the validity of a subsequent marriage, not only that deceased moved from the county of his residence, thereby overriding the inference the law warrants that he continued to live there, but also that he obtained a divorce on false testimony.

III. The strength of the presumption that a marriage is valid necessarily depends largely upon the circumstance of each particular case. Where but the form or regularity of a particular ceremony is involved, as well as in cases involving questions of legitimacy and in prosecutions for the crime of adultery, the presumption is generally said to be strong. But, where the issue is between rival claimants to the rights of surviving widow of a person deceased, there is no apparent reason for barricading the relationship of the one with presumptions and declining to allow the other to contest the issue on equal terms. True, the law raises a presumption in favor of the innocence of the parties to the last marriage, and, where both wives of deceased are alive, this necessarily involves an inference that the first marriage has been dissolved by a decree of divorce. To dispute this inference is to charge the parties to the last marriage with immorality and crime, and of necessity evidence is exacted to sustain the accusation and overcome the inference in favor of innocence otherwise to be drawn. In other words, proof of the last marriage alone makes out a *prima facie* case as to its validity. *Hunter v. Hunter* 111 Cal. 261 (43 Pac. 756, 31 L. R. A. 411, 52 Am. St. Rep. 180). To overcome this *prima facie* case, proof of a former marriage is required, and also evidence from which it may be concluded that it has not been dissolved by death or divorce.

In *Goodwin v. Goodwin,* 113 Iowa, 319, it was said that the presumption in favor of the validity of the last

4. Same.

marriage, in the absence of other evidence, is not sufficient to overthrow the presumption in favor of the continuing validity of the first marriage. The statement, standing alone, is inaccurate; but an examination of the opinion discloses that the evidence adduced rebutted any inference of a divorce, and for this reason the case was correctly decided. In *Ellis v. Ellis,* 58 Iowa, 720, the first wife had not obtained a divorce, and had afforded her husband no cause upon which he could legally procure a divorce from her, and the court held that, before it would be presumed that he had procured a decree dissolving the bonds of matrimony, " there must be some fact upon which the presumption can be legitimately founded. There must be something, based on the acts and conduct of both parties, inconsistent with the continuance of the marriage relation, before the presumption should be indulged." The rule as thus stated has been approved in subsequent decisions. *Gilman v. Sheets,* 78 Iowa, 499; *Barnes v. Barnes,* 90 Iowa, 282; *Goodwin v. Goodwin,* 113 Iowa, 319; *Tuttle v. Raish,* 116 Iowa, 331; *Casley v. Mitchell,* 121 Iowa, 96. This is tantamount to saying that, in order to sustain the validity of the last marriage, it will not be presumed that deceased, not only obtained a decree of divorce, but that in doing so had imposed on the court by asserting facts known to be false and supporting them by perjured testimony. As thus understood, these decisions are, as we think, in harmony with the weight and current of authority.

In the case at bar it appears affirmatively that deceased had no ground upon which to obtain a divorce from his second wife, Frankie Colton, and for this reason the cited cases are directly in point. To obviate this conclusion appellee insists that she deserted her husband, but no evidence to this effect was introduced. Her testimony, that she went back to Kansas on a visit and offered to return, is undisputed, and was received without objection. Even if she did leave him on her own motion, however, no divorce

was procured in the counties of his or her residence, and this alone was enough to overthrow any presumption that otherwise might be indulged in favor of the last marriage.

Evidence of the declarations of deceased was mere hearsay and not admissible. Nor was the fact that he took the trouble to obtain a decree of divorce from his third wife im-

5. EVIDENCE OF DIVORCE.
portant, save as an evidential circumstance indicating that possibly he supposed the marriage to her legal. Gilman v. Sheets, *supra*. As both she and the woman he was about to marry lived in the same neighborhood, this course was doubtless necessary in order to make the change. It may be that Frankie Colton did not much concern herself because of her husband's infidelity; but she was not in a situation demanding a protest, which, with its omission, appears to have been controlling features in *Blanchard v. Lambert,* 43 Iowa, 228, and *Leach v. Hall,* 95 Iowa, 611. Upon a separate examination of the record we are united in the opinion that Frankie Colton is the widow of the deceased, and as such entitled to share in his estate. The cause will be remanded for a decree not inconsistent with this opinion.— *Reversed.*