In re BLAND'S ESTATE.

County Judge's Court, Palm Beach County.

April 10, 1957.

[black bars]

———

F. Malcolm Cunningham, West Palm Beach, for petitioner.

Phillip D. Anderson, West Palm Beach, for respondent J. H. Lesser, as administrator of the Estate of Lena Lawson Bland, deceased.

Holland & Smith, West Palm Beach, for respondents Gertrude Jennings, et al.

Albert Detz, Jacksonville, for respondent Lannie Boldin.

RICHARD P. ROBBINS, County Judge.

This cause came on before me on the petition of the administratrix de bonis non for a judicial ascertainment of the heirs at law entitled to receive the estate of Richard Bland, deceased.

Richard Bland died intestate on October 13th, 1955, at the age of 74 years. For approximately ten years he and one Lena Lawson lived together in West Palm Beach and were generally known as man and wife. It is conceded by all parties that a common law marriage existed between them if there was no legal impediment to such a marriage. "The two essentials of a valid marriage at common law are capacity and mutual consent." Marsicano v. Marsicano, 79 Fla. 278, 84 So. 156.

If Richard Bland and Lena Lawson were validly married then the estate will descend to the heirs of Lena who died subsequently to Bland. On the other hand, if, as it is contended by the administratrix, a common law marriage could not have existed because Lena Lawson was married to one Ernest Lawson during the time of her cohabitation with Richard Bland and had never been divorced, then the estate will descend to the heirs at law of Richard Bland.

J. H. Lesser, Esq., administrator of the estate of Lena Lawson Bland, reputed widow of Richard Bland, contends for the validity of the common law marriage principally on the ground that a subsequent common law marriage is presumptively deemed valid. The rule is stated by James M. Carson in his work entitled "The Law of the Family, Marriage and Divorce" at page 40 as follows—

"§ 6.—*Evidence and Presumptions.*—It is a matter of evidence, in this state that a marriage is presumed to be legal until otherwise shown; that is, if a man and woman live together as husband and wife, and there is positive proof of a general understanding among their neighbors and acquaintances in the community that they were living together as man and wife, then all presumptions are in favor of the marriage, and any one challenging the validity of the marriage has the burden of proof.

"Where conflicting marriages are contracted, the subsequent marriage is presumptively valid. Of course, that presumption may be overcome by proof, as in the case of a man having a former wife living or a woman having a former husband living."

It is clear from the evidence that Lena was married to Ernest Lawson on July 14th, 1916, in Columbus, Ohio and that they lived

together for something like 29 or 30 years when she left Cleveland to live in Florida, with Bland. If Lawson ever gave Lena grounds for a divorce, none is apparent from the testimony in the case. On the contrary letters from Lena to one Mary Hill, mother of her deserted husband, indicate that a friendly relationship continued to exist between them and that about three years before Lena died she returned to Cleveland, called upon Ernest Lawson and cohabited with him as his wife. Lawson testified that he had never received notice of a divorce proceeding if any was filed against him by Lena nor had he sued for a divorce from her.

The rule as to the presumption of validity of a second marriage is stated in the case of In re Colton's Estate, 129 Iowa 542, 105 N. W. 1008, as follows—"In determining which of two claimants is the widow of a deceased person, proof that deceased deserted his wife without cause and had no ground for divorce, and that no divorce was recorded in the respective counties in which they subsequently lived, aided by the presumption that the residence of each continued to be in the same county in which it was taken up after the separation . . . overcomes the presumption of divorce in favor of the validity of a subsequent marriage * * * ."

It is interesting to note in the Colton case that two attorneys testified that they had examined the court records in the counties where the parties resided after their separation and found no divorce decree. The administrators moved to strike this evidence because incompetent and contended that the absence of such decree should have been proven by a certificate of the custodian of the records.

The court held that the statutes of Iowa authorized proof of judicial records by duly certified copies but that there was no statute authorizing the absence of any particular decree from the records to be proven by the certificate of the officer having the records in his custody, and, in the absence of such a statute, a certificate as to the absence of records is not admissible in evidence.

We have the same situation in the case at bar. The administratrix has filed in evidence certificates of the clerk of courts of Franklin County, Ohio, and of the director of the bureau of vital statistics of Florida, to the effect that a careful search had been made and no divorce report could be found on file for Ernest Lawson and Lena Lawson.

Our Florida statutes, like those of Iowa, do not authorize the custodian of public records to certify as to the absence of records. Section 92.10, Florida Statutes 1955, provides that—

"Copies of the records and judicial proceedings of any court in this state, or of another state or territory, or of the United States, shall be admissible in evidence in all cases in this state, when authenticated by the attestation of the officer having charge of the records of such court . . ."

and section 92.12 provides as follows—

*"Copies of evidence of records of public officers in general.*—In all cases where any record, conveyance, paper or instrument of writing is, or may be, required or authorized to be made or filed or recorded in any public office of this state or of any county thereof, a copy thereof, duly certified under the hand and seal of office (if there be seal of office, and if there be no seal of office, then under the private seal of the officer having the custody or control of the same), to be a true and correct copy of the original, on file or of record in his office, shall in all cases and in all courts and places be admitted and received in evidence with the like force and effect as the original thereof might be. Nothing herein contained shall be so construed as to prevent any court or judge before whom such copies may be offered in evidence from requiring the party offering the same to produce or account for the original of such copy, if the same shall be deemed necessary or proper for the attainment of justice."

and section 382.25, Florida Statutes 1955, requires clerks of circuit courts to furnish the central bureau of vital statistics of the state board of health a record of each decree of divorce granted by said court, and paragraph (5) of section 382.34 requires the state registrar, upon request of any person having a proper interest, to supply "a certified copy of all or part of any * * * divorce * * * recorded under the provisions of this chapter."

In an early Florida case, Parker v. Cleveland, 19 So. 344, a certificate of the clerk of the circuit court of Hernando County to the effect that certain land had not been transferred or mortgaged was excluded as inadmissible. This was assigned as error. Our Supreme Court said at page 346—"The law as to certificates of clerks as custodians of records only extends to transcripts of such records. If their testimony is desired upon other points, they should be regularly sworn, and testify as other witnesses."

The rule as to admissibility of certificates is stated by Greenleaf in his work on Evidence, 15th ed., vol. 1 at page 645—"Sec. 498. *Certificates*—In regard to certificates given by persons in official station, the general rule is, that the law never allows a certificate

of a mere matter of fact, not coupled with any matter of law, to be admitted as evidence. If the person was bound to record the fact, then the proper evidence is a copy of the record, duly authenticated. But as to matters which he was not bound to record, his certificate, being extraofficial, is merely the statement of a private person, and will therefore be rejected so, where an officer's certificate is made evidence of certain facts, he cannot extend its effect to other facts, by stating those also in the certificate; but such parts of the certificate will be suppressed."

In arriving at its decision in the Colton case the Iowa Court cited Wigmore on Evidence, section 1678. The rule is stated by the author substantially as follows—"Upon the common-law principle * * * a custodian of documents * * * lacked authority to certify that a specific document did not exist in his office * * *" Professor Wigmore goes on to say in volume 5 of his work on evidence at page 754 that—"It will some day be reckoned as one of the most stupid instances of legal pedantry in our annals. The certificate of a custodian that he has diligently searched for a document or an entry of a specified tenor and has been unable to find it ought to be usually as satisfactory for evidencing its non-existence in his office as his testimony on the stand to this effect would be; * * *".

Despite the rule that the certificates aforesaid cannot be given weight as evidence in the case there are enough facts and circumstances related in the testimony of witnesses to convince me that Lena Lawson was not divorced from Ernest Lawson and consequently did not have the legal capacity to become the common law wife of Richard Bland.

It is therefore ordered, adjudged and decreed that the heirs at law entitled to receive the estate of Richard Bland, deceased, are his next of kin, to-wit: Bertha Bland Robinson, Gertrude Jennings, Lelah Brown, Jerusha Gray, Lannie Boldin and Alzinier Broughton, his nieces named in the petition aforesaid.