WILLIAM L. BLANCHARD *vs.* CYRUS H. ILSLEY.

Suffolk. Nov. 12, 1875. — Sept. 6, 1876. ENDICOTT & LORD, JJ., absent.

At the trial of an action for seduction, it appeared that the injured girl, who was the sister of the plaintiff's wife, was, at the time of the seduction, taking care of the plaintiff's household, without paying board, during the sickness of the plaintiff's wife, upon an understanding with the plaintiff, but with no agreement with her father or herself as to the payment of wages or for any definite period of service. *Held*, that this did not establish the relation of master and servant so as to give a right of action to the plaintiff.

A guardian cannot, as such, maintain an action for the seduction of his ward.

TORT for seducing a girl under twenty-one years of age, alleged to be the plaintiff's servant. At the trial in the Superior Court, before *Allen*, J., there was evidence tending to prove the following facts :

The girl was born July 13, 1855. In 1868 she came to live with the plaintiff and his wife, who was the girl's sister, at Jamaica Plain, and thereafter, with the exception of her absence at school or on visits, continued to live in the plaintiff's house as her home. There was no evidence of any intention on her part to return to live with her father, or of any intention on his part to invite her to return or to claim her services.

The father of the girl kept house with his wife and daughters in Waltham in 1862. In May, 1862, he broke up housekeeping and went alone to Newbern, North Carolina, where he was engaged in business till 1872. In the latter year he returned to Boston, and since then has resided there, boarding at different places. He was in the habit frequently of visiting at the plaintiff's house. After the father's removal to North Carolina, his wife and her daughters boarded together till 1863, when the wife died. Thereafter the daughters lived in Roxbury with their aunt and grandmother until 1867. In that year, the girl went to Pembroke and remained a year on a visit. At the expiration of that visit she came to the plaintiff's house at Jamaica Plain, as above stated. The father paid his family expenses until 1867, since which time he has been unable so to do, and has done nothing towards such expenses.

From 1868 to September, 1871, the girl attended school at Jamaica Plain. During the vacations, and at other times when at home, she assisted her sister in the care of the latter's children and of the house. No money was paid to the plaintiff for her board. Her grandmother furnished some money which paid for her clothing and her personal expenses. In 1870 her grandmother was appointed her guardian, and in that capacity held a small amount of property. In March, 1874, her grandmother died, and the plaintiff was appointed guardian, which appointment he still holds. In September, 1871, the girl went to school at Norton, and remained there till June 14, 1873, with the exception of vacations, of which there were three each year, amounting in all to about two months of each year. The expenses of this schooling were paid by the grandmother. The girl spent the vacations at the plaintiff's house, there rendering the same service as before.

In June, 1873, the plaintiff's wife became insane and was removed to a hospital, and the plaintiff, in anticipation of his wife's removal to the hospital in June, sent for the girl to return immediately from school. She at once left school and returned to the plaintiff's house, arriving there June 14, the day subsequent to the wife's removal. The school term ended July 1. On June 15, the plaintiff and the girl had a conversation about the household arrangements, and it was then agreed between the plaintiff and the girl that the latter should assume the care of the house and of the plaintiff's children, and that she should be assisted by a nurse. An additional servant, who had been employed prior to that time, was discharged by the plaintiff a few days afterwards. Subsequently to June 15, the girl took care of the house, doing the necessary work, except the sweeping in the parlors and chambers, assisted the nurse a little in the cooking, and took the entire charge of the oldest child, a boy about five years old. After the plaintiff's wife's return in January, 1874, the girl continued to render the same services, but an additional servant was then obtained to help her.

The father visited at the plaintiff's house before and after June 15, 1873, knew of the service which the girl was rendering, and acquiesced, without saying anything on the subject by way of assent or dissent.

In August, 1873, the girl made a visit of about three weeks, taking with her the plaintiff's oldest child, of whom she had the sole care during her visit. She went on this visit because, as she testified, she was run down by reason of her impaired condition of health. For the same reason, she afterwards made visits in 1874.

There was evidence tending to prove that about June 1, 1873, while attending school at Norton, and subsequently while at the plaintiff's home, during the sickness of his wife, the girl was seduced by the defendant; that prior to 1873, she was strong and well, and of gay, cheerful spirits; and that subsequently to June, 1873, her physical health became impaired, she became very nervous and irritable, lost interest in her ordinary occupations, and was unable to work as before.

Upon this evidence, the presiding judge ruled that the action could not be maintained, and directed the jury to return a verdict for the defendant. The plaintiff alleged exceptions.

*R. M. Morse, Jr.,* for the plaintiff.

*W. C. Loring, (C. R. Train* with him,) for the defendant.

COLT, J. Actual loss of service by the wrongful act of the defendant is the technical foundation of the plaintiff's action. Such loss of service will be presumed in favor of the father who has not parted with his right, where the daughter is under age and resides with him; *Hewitt* v. *Prime,* 21 Wend. 79; and, according to the more recent American cases, where he retains the legal right to claim her service, although she resides and is temporarily employed elsewhere. It results from the legal obligation imposed upon him to provide for her support and education, which gives him the right to the profits of her labor. *Kennedy* v. *Shea,* 110 Mass. 147, and cases cited. *Furman* v. *Van Sise,* 56 N. Y. 435, 444. *Emery* v. *Gowen,* 4 Greenl. 33. *Clinton* v. *York,* 26 Maine, 167. *Griffiths* v. *Teetgen,* 15 C. B. 344. See also note to *Martin* v. *Payne,* in Bigelow Lead. Cas. Torts, 286. The father's inability or failure to support his children does not alone deprive him of this right. *Benson* v. *Remington,* 2 Mass. 113.

In the case at bar, the evidence fails to justify a finding by the jury that the father had permanently or temporarily parted with his right to his daughter's services, or that he had waived

his right for any definite or indefinite period, by contract with the plaintiff, permission granted to the child, or otherwise. It fails to show a case of concurrent service, which, if it ever can exist, can exist only when it is the result of contract, without which an infant daughter cannot be the servant of two at the same time. *Hedges* v. *Tagg*, L. R. 7 Ex. 283, 285. There was nothing to show emancipation or intentional abandonment. The fact that he knew where she was living and the assistance she was rendering, " and acquiesced, without saying anything by way of assent or dissent," is not enough. The most that the evidence can be said to prove is that, upon an understanding between the plaintiff and the injured girl, who was a sister of his wife, the latter, with no agreement with her or with the father for the payment of wages, or for any definite period of service, assumed the care of the plaintiff's household while the wife was disabled by sickness, and sustained that relation, without paying board, at the time of the alleged seduction. This does not establish the relation of master and servant, so as to give a right of action to the plaintiff, to the exclusion of, or concurrently with, the father.

The fact that the plaintiff was also the legally appointed guardian carries with it no right to the service of the ward, and no obligation to support her, except to the extent of the property belonging to her which came to his hands. Gen. Sts. *c.* 109, § 19.                                                 *Exceptions overruled.*