## GRAHAM v. WALLACE.

(Supreme Court, Appellate Division, Fourth Department. March 21, 1900.)

SEDUCTION—CIVIL LIABILITY.

> A female ward may maintain an action in her own behalf, on attaining her majority, to recover damages of her personal guardian for her seduction by him when she was under the statutory age of consent.

Appeal from special term, Onondaga county.

Action by Maude Graham against Alvin D. Wallace. From an order overruling defendant's demurrer to the complaint, he appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, and LAUGHLIN, JJ.

Nathan L. Miller, for appellant.
Thomas Woods, for respondent.

LAUGHLIN, J. The plaintiff seeks to recover damages for her seduction by the defendant. The complaint alleges that the plaintiff became an orphan at the age of 14 years; that she was related to defendant's wife; that defendant was shortly thereafter appointed general guardian of the person and property of the plaintiff by the surrogate of Cortland county; that he filed a bond, took his oath of office, and entered upon the trust; that within a year thereafter he took plaintiff to reside at his home, and thereupon, in violation of his trust, and of the duties and obligations he, as such general guardian, owed to the plaintiff, began to make improper suggestions to her and to take improper liberties with her, resulting in his assaulting and prostituting her to gratify his lustful desires, and in sexual intercourse between them in the month of August, 1893, she being then only 15 years and 8 months of age, and he being 40 years of age; and that such intercourse continued at intervals for nearly 6 years. Plaintiff brought this action a few days after attaining her majority. Defendant demurred on the ground that it appears upon the face of the complaint that the same does not state facts sufficient to constitute a cause of action. Plaintiff being under the age of 16 years at the time of her seduction, the criminal law presumes conclusively that she was incapable of consenting thereto, and the defendant was guilty of the crime of rape. Pen. Code, § 278, prior to amendment of 1895; Dean v. Raplee, 145 N. Y. 326, 39 N. E. 952.

The question to be decided is whether a female ward may maintain an action in her own behalf to recover damages of her personal guardian for seduction when she was under the statutory age of consent. There being no parent or master to bring the action, if the ward may not maintain it, no one else can; and the guardian, into whose custody and control the court delivered the infant, may claim and exercise the privilege of seducing his ward, without becoming responsible to the infant in a civil action for damages for the wrong and injury. We find the action without precedent. There appears to be no recorded case expressly affirming or expressly negativing the right of a ward to recover damages for seduction committed by the guardian of her person. At common law (and the rule still prevails, at least in ordinary cases, in the absence of a statute removing the disability) a female could not sue to recover damages for her seduction, although her parent or master might. Hamilton v. Lomax, 6 Abb. Prac. 142, 26 Barb. 615; Buckles v. Ellers, 72 Ind. 220; Woodward v. Aderson, 9 Bush, 624; Weaver v. Bachert, 2 Pa. St. 80; Paul v. Frazier, 3 Mass. 71; Ellington v. Ellington, 47 Miss. 329; Smith v. Richards, 29 Conn. 232; 21 Am. & Eng. Enc. Law, 1022; Pol. Torts, 194; 1 Jag. Torts, 454; Bish. Noncont. Law, § 57. This general rule is founded upon certain legal maxims, as, "In pari delicto potior est conditio defendentis," and "Volenti non fit injuria." Where both parties are equally in the wrong, the law will not afford relief; nor will relief be awarded

where a party has consented to the act which resulted in the loss of which he complains. Bouv. Law Dict.; Broom, Leg. Max. p. 268. In Smith v. Richards, supra, it is held that there are, and should be, exceptions to this rule. The court, in making an exception, and allowing a recovery on a note given by the defendant in settlement of an action for seduction by defendant after fraudulently inducing plaintiff to make her home with him as his servant, when she was only 14 years of age, and an orphan, held that the action for seduction could have been maintained, on the peculiar facts of that case, and, commenting on the general rule, said:

"This is the general law, we suppose, in a simple case of seduction, but there may be circumstances connected with the act of such a character as to take the case out of the general rule; and, where such circumstances in fact exist, courts may be presumed to be ready to lay hold of them for the purpose of punishing an artful seducer, and to indemnify betrayed innocence. The seduced female, it is true, is not allowed to bring suit in her own name, because she is a particeps criminis, and cannot be heard in her complaint in court, though forever ruined through the insidious acts of the most consummate villainy. Be it so. Let the rule of law remain with the qualification above stated. Perhaps it is the part of wisdom and safety that it should be so, lest by changing it we should unwarily put it in the power of the female sex to become seducers in their turn, and to prefer false claims for a pretended violation of their chastity."

Can it be fairly said that the plaintiff, in yielding to the advances and desires of her guardian, to whom alone she had a right to look for proper moral advice, care, and protection, with whom she was living, and upon whom she was wholly dependent, is equally in the wrong, and consented to the act, within the fair construction and reasonable application of these maxims? The defendant, by virtue of his guardianship, stood in loco parentis to the plaintiff. Is it just to assume that she possessed such thorough knowledge of the wrongfulness of the act, and such freedom of will, as to avoid being deceived by her guardian, and to know that it was her duty to resist? In failing to resist to the extent of her physical ability, does any public policy require that she be precluded from obtaining legal redress for her guardian's perfidy and betrayal of his trust and her confidence? Let us examine the legal relation existing between guardian and ward, and the obligations thereby imposed upon each, to ascertain whether they may not furnish a basis for an exception to the general rule.

Everley, in his work on Domestic Relations ([2d Ed.] 614), says:

"Guardianship is a trust, and a trust of delicacy and importance, which the good ordering of society requires to be faithfully carried out. * * * It will thus interfere with those guardians who are appointed to the person of an infant, and this species of guardianship is a more exacting kind of trusteeship than a mere trust to hold or dispose of property."

In Schouler, Dom. Rel. § 335, the author says:

"As the guardian is bound to promote the moral welfare of the person intrusted to his care, he may ward off from the ward's premises any persons improper for him to associate with, and, if necessary, expel them by force.

"To the orphan he stands, in some sense, in the place of a parent, and supplies that watchfulness, care, and discipline which are essential to the young in the formation of their habits, and of which, being deprived altogether, they would better die than live." Id. § 336.

Guardians appointed by the court, and testamentary guardians, are required to take oath that they will well, faithfully, and honestly discharge the duties of the office of general guardian of the person and property of the ward.   Code, §§ 2594, 2852.

In Thomas v. Bennett, 56 Barb. 198, Foster, J., speaking of a testamentary or statutory guardian, says:

"He takes the custody and tuition of his ward, and may maintain an action for taking or detaining him, though the damages which he recovers are for the benefit of the ward."

In Fernsler v. Moyer, 3 Watts & S. 416, it was held that a guardian stands, in relation to his ward, in loco parentis, and may recover damages for her seduction:

"The guardian, on the decease of the father, stands in loco parentis, possesses all his control and authority, and is subjected to his duties, except only that of maintaining the ward out of his own estate. A guardian has not a bare authority only, but an interest. At common law, the guardian could recover damages for his ward in trespass, and by Westm. II. c. 35, has a writ of ravishment of ward, and may recover the body; and by the equity of the statute a guardian in socage, or testamentary guardian, has this remedy. Almost every reason on which the right of a father to sue in a case like the present is founded seems to apply to a guardian. He has a right to the care, custody, control, and disposal of his ward's person, and owes a duty to him in return, for which he is responsible. He controls his services according to his condition in life, and is bound to educate and maintain him; and its being out of the ward's estate cannot make a difference in this respect. Without the consent or authority of the guardian, the ward cannot legally make contracts, or bind himself by indenture or to service. The relation of master and servant exists, from the legal control he has over the services of the minor, to the same extent in the case of a guardian that it does in the case of a father. The reciprocal power and duty of a guardian and minor are for the time being the same as those of a father and child. It is said the guardian is not entitled to the earnings of the minor, as the father is. If that were so, it could make no difference in other respects in the powers and duties mutually existing between them, which have been created by law for the benefit and protection of the minor, when he is by nature disabled from taking care of himself."

The right of a guardian to maintain such an action is denied in Blanchard v. Ilsley, 120 Mass. 487; and, as it is perhaps an open question in our state, we express no opinion thereon.   Certwell v. Hoyt, 6 Hun, 575.

In Brattain v. Cannady, 96 Ind. 266, the court, in overruling a demurrer to a complaint in an action brought by the ward against her guardian for a breach of trust, in negligently permitting her seduction by his son after he himself had corrupted her morals, held that it was the duty of the guardian to promote the moral welfare of his ward, and that a breach of such duty was, under the circumstances stated, a legal wrong, for which she could recover damages.

In Rich v. Railroad Co., 87 N. Y. 390–395, Judge Finch says:

"Ordinarily the essence of a tort consists in the violation of some duty to an individual, which duty is a thing different from the mere contract obligation. Where such duty grows out of relations of trust and confidence, the ground of the duty is apparent, and the tort is, in general, easily separable from the mere breach of contract. * * * So that upon a breach of the contract there is not merely a broken promise, but, outside of and beyond that, there is a trust betrayed and confidence abused. There is constructive fraud, or a negligence that operates as such, and it is that fraud and that negligence which at bottom make the breach of contract actionable as a tort."

It has long been settled that, where a woman is seduced under a promise of marriage, the doctrine of in pari delicto may not be invoked to defeat her action for damages. In Wells v. Pudgett, 8 Barb. 325, the court said:

"The female and her seducer do not stand upon equal grounds. She is the weaker party, and the victim of his acts; and the seduction has been practiced upon her under the false color of a promise of marriage, which he never intended to perform. They are not equally guilty. It is an abuse of language to say that the parties are in pari delicto."

Judge Campbell, in Sheahan v. Barry, 27 Mich. 217, says:

"A marriage engagement brings the parties necessarily into very intimate and confidential relations, and the advantage taken of those relations by the seducer is as plain a breach of trust, in all its essential features, as any advantage gained by a trustee or guardian or confidential adviser who cheats a confiding ward or beneficiary or client into a losing bargain. The contract involves protection and respect as well as affection, and is violated by the seduction, as it is by the refusal to marry."

Judge Cooley, in his work on Torts (pages 510–512), after quoting Gibson, C. J., in Weaver v. Bachert, 2 Pa. St. 80, makes this observation:

"But between the case of a husband consenting to the dishonor of his bed, and that of a woman cheated by a deception to marry into a surrender of her chastity, there does not seem to be any such analogy as to make the legal rules which should govern the one throw light upon the other. The one instinctively excites disgust, and the other compassion. One party assents from motives that can only be low and vile, the other is the victim of perfidy. It is true, there is consent, but so there is in other cases of fraud; for it is by obtaining consent that frauds are accomplished."

It is the duty of the courts to make reasonable exceptions to general rules, and to apply legal principles to new cases as they arise. Where there are no precedents, we must decide according to our own judgment of what is right, expedient, and dictated by reason. Lord Mansfield, 3 Burrows, 1364; 3 Doug. 203; Best, C. J., 3 Bing. 590.

The remarks of Judge Vann in Kujek v. Goldman, 150 N. Y. 178, 44 N. E. 774, 34 L. R. A. 157, are quite in point. He says:

"While no precedent is cited for such an action, it does not follow that there is no remedy for the wrong, because every form of action, when brought for the first time, must have been without precedent to support it. Courts sometimes of necessity abandon their search for precedents, and yet sustain a recovery upon legal principles clearly applicable to the new state of facts, although there was no direct precedent for it, because there never had been an occasion to make one."

The seduction of the ward by his guardian is not merely a breach of moral duty or social wrong, of which the law takes no cognizance, but it is also a violation of the legal obligations assumed by him, and it may properly be deemed a legal wrong. The existence of the relation of guardian and ward adds to the turpitude of the defendant's conduct, not only from a moral point of view, but in view of that relation his conduct constitutes a willful violation of his oath and of his legal obligation to the ward, besides being a breach of the criminal law; the ward being under the age of legal consent. Since the ward cannot, in a legal sense, give consent to the commission of the immoral act, and the seduction is condemned by the criminal law, the guardian ought not to be permitted to avail himself of the maxim,

"Volenti non fit injuria," as a defense to an action for damages occasioned by the wrong. The ward being entitled to proper moral training by her guardian, he is under legal obligation to refrain from taking advantage of the trust and confidence reposed in him, and to abstain from corrupting her morals, ruining her character, or stealing her virtue. The ward cannot waive performance of this duty, or surrender these rights of protection. When the guardian thus betrays his trust, and ruins the morals, the character, and reputation of his ward, he should not be heard to say in a court of justice, by way of legal excuse or justification for the seduction, that the ward was capable of consenting. Consent obtained under such circumstances is no consent, and should stand for naught. It is essential to the preservation and enforcement of the ward's right of protection in her chastity and virtue that a violation of this right by her guardian should not pass with impunity, but that it should be vindicated, and the seducer punished on the civil as well as on the criminal side of the court. We think the cases authorizing a recovery by a female who is seduced under a promise of marriage are authority for the right of recovery by the plaintiff. In the one case the female surrenders her virtue, relying upon the fulfillment of a promise at some future time, and the breach of promise operating retroactively renders the act of seduction a species of fraud. In the other, the ward is seduced by the person appointed by the court as the legal custodian of her person and the protector of her morals. The adult female has full freedom of action, subject to no will but her own. The ward, on the other hand, being subject to the influence of her guardian, is not a free agent, and is not equally culpable with him. The guardian has taken undue and unfair advantage of his quasi parental relation, if the complaint be true, and committed a flagrant breach of his trust, and a grievous injury to the person he was bound to watch over and protect. He has willfully corrupted her morals, where it was his duty to guard and protect them; and he must make some reparation, though inadequate, by being held to answer to her in damages. These views are not inconsistent with the case of Dean v. Raplee, 145 N. Y. 319, 39 N. E. 952. The precise question here presented was not involved in that case, and two important facts distinguish it from the case at bar: That action was not against a guardian of the person, and the acts did not, at the time of their commission, constitute the crime of rape. For these reasons, we think the complaint states a good cause of action, and the order and judgment appealed from should be affirmed, with costs to the respondent to abide the event.

Interlocutory judgment affirmed, with costs, with leave to the defendant to withdraw his demurrer and answer upon payment of the costs of the demurrer and of this appeal. All concur.