## Victoria Patelski, Plaintiff in Error, v. John W. Snyder, Defendant in Error.

### Gen. No. 17,323.

1. HUSBAND AND WIFE—*actions and defenses.* The "Act to revise the law in relation to husband and wife," approved in 1874, providing that a married woman may in all cases sue and be sued without joining her husband, did not create for the wife a right of action for personal injuries to the husband which did not before exist, nor did it undertake to give her any more control of her husband's property, earnings or other choses in action than she had before.

2. HUSBAND AND WIFE—*right of action of wife for injuries to husband.* Where a married man receives personal injuries because of the negligence of a person who is liable to him for the injuries, his wife has no right of action against such person for her loss or damage caused by such injuries.

Error to the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the March term, 1911. Affirmed. Opinion filed April 21, 1913.

JAMES R. WARD, for plaintiff in error.

MANN & MILLER and HANS L. HOWARD, for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

A question of law only is presented by this writ of error. The plaintiff below and plaintiff in error here, Victoria Patelski, on April 29, 1910, began suit in case against John W. Snyder, defendant below and defendant in error here, designating her damages at $15,000. About a month later she filed her declaration, from which it appears that her claim results from the following alleged facts:

That she was on July 27, 1908, the wife of one Stanislaus Patelski, and living with her husband in Chicago, and that (to quote now from the declaration):

"For many months prior to said July 27, 1908, the said Stanislaus Patelski was by occupation a stone and brick mason and had pursued his vocation for a long time prior thereto, and earned and received for his services as a stone and brick mason in working for divers persons in and about the City of Chicago on and prior thereto the sum of at least forty dollars ($40.00) per week, which monies and earnings the said Stanislaus Patelski from time to time brought home to and expended the same together with the plaintiff in support of and in maintaining the plaintiff, himself and his family comfortably and suitably to their station in life. And plaintiff avers that on the 27th day of July, 1908, aforesaid and prior thereto and ever since her said marriage to the said Stanislaus Patelski she was entitled to in law and did receive the support and maintenance aforesaid from her husband suitable to their station in life and had always demeaned herself faithfully toward her husband and was entitled to a continuation of said support and maintenance."

The declaration then sets up in detail the employment of the said Stanislaus Patelski by the defendant Snyder and his serious and permanent injury through the negligence of said Snyder, whereby the said Stanislaus Patelski was (quoting again)—

"permanently lamed and impaired in health and body and mind and unable to work at his occupation or perform other services and earn compensation and means with which and by which to support and maintain the plaintiff as his wife aforesaid from thence hitherto, and was compelled to remain and lie in bed and be subjected to divers painful surgical operations and treatments for said injuries and was necessarily kept and detained away from his home and the plaintiff, whereby the plaintiff was deprived of the comfort, society and assistance of her said husband and of the means of support and maintenance which he had been accustomed to provide and give to her, whereby the plaintiff became and was, and was necessarily caused to become ill, sick and distressed and increased burdens of earning for her family and children were

necessarily imposed upon her as a result thereof, and plaintiff avers also that by reason of the premises she was required to expend and lay out divers sums of money caring for and assisting her said husband during his illness and in going from her home to the hospital, to-wit, St. Anne's Hospital at a great distance in the City of Chicago aforesaid from the home of the plaintiff, * * * whereby the plaintiff says she has sustained damage and is damaged in the sum of Fifteen Thousand Dollars ($15,000), etc.''

To this declaration the defendant Snyder filed a general demurrer, which after argument the Circuit Court sustained, entering in consequence a judgment of *nil capiat* and for costs against the plaintiff. To reverse this judgment this writ of error has been prosecuted.

The only question presented is whether for a personal injury to a married man, through the negligence of another, the person liable for the injury to the man himself is also liable for it to the man's wife.

The argument of the plaintiff is rather founded on general grounds urged as comformable to logic and right reason than on authority, although one or two citations are made which we shall notice.

Counsel says in his argument:

''Why not declare the law to be as follows: For injuries received by a married man two actions may lie; one by the husband for damages resulting to himself, and if by reason of such injuries the wife has received a separate loss or damage,—as if she has thereby been deprived of the protection, society, services and means of support of and from her husband, or has been put to expense or increased burdens in supporting, maintaining and caring for him, she may bring an action in her own name against the wrongdoer and recover the damages she has sustained?''

The answer to this question is that we have no right or power to declare the law to be other than it is, even though it should seem that a change would be for the better. If the law should be changed, it is the duty of the legislature and not of the courts to change it.

But since much emphasis is placed by counsel's argument on the natural justice of the plaintiff's claim, it might be suggested that if the wife is to be given an action for personal injuries to the husband because of the probable pecuniary loss to her, it would be difficult to distinguish in reason and natural justice between her right and that of any other person dependent on or entitled to a portion of his earnings. If the wife can recover, why not each of the minor children dependent on him for support and education? If the minor children, why not those family relations whose support, in case of their indigence, is placed on him by law? Or why not each of his creditors, who suffers a pecuniary loss in his inability to pay? Or even the societies or charitable associations to which he is no longer able to contribute? Where would the right of action for a single injury end?

Since, however, by his injury the injured man is not relieved by law from any of his legal obligations, among which is primarily the support of his family, why is it not the most feasible method of securing the result desired, to give to him the right of action and hold him, as before, to a discharge of his legal obligations? That, we think, is exactly what the law in all jurisdictions has done, almost universally supplementing it in order that there may not be a failure of justice, by the Campbell Acts, which provide in favor of widows and next of kin for death losses.

The plaintiff, however, insists that because by the "Act to revise the law in relation to husband and wife," approved March 30, 1874, it is provided:

"That a married woman may in all cases sue and be sued without joining her husband with her, to the same extent as if she were unmarried, and an attachment or judgment in such action may be enforced by or against her as if she were a single woman,"

married women are placed on an equality of natural rights with married men, and that such equality demands and makes it the law for us to administer, that

as a husband has a right of action to recover loss and damage to him by reason of a personal injury to her, the wife, by parity of reasoning, has a right of action to recover loss and damage to her by reason of a personal injury to him.

We do not see that this statute places married women on an entire equality of right in this respect with married men any more than it bestows on them an equal right of suffrage or makes them eligible for all offices in the state.

None of these things seem to us to have been the purpose of the statute. That purpose was apparently simply to extend, to include all pecuniary or property claims belonging to her, the right which the Act of March 24, 1869, had first given to a married woman in regard to her own earnings; that is, the right to receive and sue for her own earnings without the intervention and free from the interference of her husband.

But it did not profess to vest in her or create for her any pecuniary claims which she did not before have.

The law of 1869 indeed not only gave her the right to sue in her own name for her earnings, but for the first time gave her the right to those earnings, which previously had belonged to her husband. But the law of 1874, while extending the legal independence of a married woman as to all legal proceedings and in many particulars increasing her responsibilities and diminishing those of her husband, did not undertake, as we read it, to give her any more control of her husband's property, earnings or other choses in action than she had before. Nor did it create for her a right of action for personal injuries to him which did not before exist.

The question then is, did such a right exist before the passage of the act. It does not, in this view, advance the argument to point to the fact that the husband had before and has now the right of action for an injury to his wife, whereby he was deprived of her

services, for he had and has a legal right to her services before and since the passage of the act, as indeed seems to be recognized by the statute of 1869, which expressly declare that the act shall not be construed to give to the wife any right to compensation for any labor performed for her husband.

But we cannot find in the law as it existed before the Acts of 1869 or 1874 any such legal right or interest of the wife in the labors or services of her husband.

The theory of the law was different. Imposing on the husband the duty of supporting his wife and family, it gave to him solely the right to dispose of his labor in any way he saw fit, and gave to him solely the right to the wages he earned, which were the means with which these obligations were to be met. And to him belonged the compensation for an injury which deprived him of those wages. The compensation thus received was supposed to furnish him the means to meet his family obligations, as his wages previously had done.

Nor can we find any authority to sustain an action like the present one, unless those cases which have supported the right of the wife to sue for the alienation of her husband's affections, and the case cited by the plaintiff in error (Clark v. Hill, 69 Mo. App. 541), in which the St. Louis Court of Appeals sustained the right of a wife to damages given to her by the lower court, for the defendants driving her husband to insanity by threats, can be so considered. We think this last case may be disregarded. The real question involved seems hardly to have been considered, the court is of inferior jurisdiction, and the opinion is very summary, citing in its support only a case of an action for the alienation of a husband's affections.

And although there is much variation in the reasoning of the opinions in the many reported cases from various jurisdictions which have supported ac-

tions for such alienation, we think that the soundest ground on which they have ever been put has been that the common law gave to a married woman the right to the action for the loss of the *"consortium"* of her husband, but that the enabling acts which allowed her to sue without joining her husband have given to her the first practicable method of enforcing that right. This is the view taken by the Court of Appeals of New York in the leading and well considered case of Bennett v. Bennett, 116 N. Y. 584, and by the Appellate Court of this State for the Fourth District in Bassett v. Bassett, 20 Ill. App. 543. But in any case, if courts have supported this kind of action on the theory that advancing justice in regard to the marriage relation demanded that the wife's rights in this regard should be correlative or identical with those of the husband, it can hardly be expected that this court, which is not one of last resort or of ultimate appeal, should adopt and extend the effect of this reasoning to support an alleged right of the wife to recover for physical injuries to a husband caused by the negligence of another. The new departure, if it is to come, should not come from an intermediate court. There is, in our view, no precedent for it, which in itself is evidence of the consentient opinion of the courts and the profession against the right claimed, since occasions for its exercise, if it exists, arise continually in every jurisdiction.

"The argument of negative usage as applicable to this case, if not decisive, is extremely strong." Duke of Newcastle v. Clark, 8 Taunton 602, p. 621.

The judgment of the Circuit Court is affirmed.

*Affirmed.*