## DAILY et al. v. PARKER.
### No. 8852.

Circuit Court of Appeals, Seventh Circuit.

Nov. 2, 1945.

---

See also, D.C. 61 F.Supp. 701.

Urban A. Lavery, of Chicago, for appellant.

A. R. Peterson, Owen Rall, Walter W. Ross, Jr., and Tim G. Lowry, all of Chicago, Ill. (Eckert & Peterson, of Chicago, Ill., of counsel), for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

EVANS, Circuit Judge.

The instant appeal raises this question: Have children, living in Pennsylvania, a cause of action for damages against a woman living in Illinois who caused their father to leave them, their mother, and their home and go to Chicago and live with her and to refuse to further contribute to their maintenance and support? The District Court answered the question in the negative and dismissed the complaint.

■ An answer to the question necessitates its being broken into several narrower inquiries: (a) Will the Federal Court recognize and enforce such a cause of action in the absence of any direct holding by the state court upholding such cause of action? (b) Should a State or Federal Court recognize such a cause of action in the absence of legislation by the state granting such a cause of action to the minor children? (c) Is there anything in the Illinois or Pennsylvania constitutions or statutes which prevents this court from recognizing such a cause of action in the plaintiffs?

After study and reflection, we answer all three questions in plaintiffs' favor.

Plaintiffs are the four minor children of Mrs. Olive Means Daily and Wilfred J. Daily. They bring this action through their mother as next Friend, against the defendant, Mrs. Marian Parker, who, they allege, enticed their father from his and their home and to go to Chicago where he lives with defendant, a married woman, and they further allege that their father fails and refuses to maintain or support them or their home. All of this conduct or misconduct on their father's part is allegedly due to defendant's successful efforts in using her feminine charms, to entice and lure said father from his home that he might live and cohabit with defendant in Chicago.

■ Our approach to the question must be based on a study of the rights and obligations of all who are parties to a *family*. The father, the mother, and the children ordinarily constitute the family. Each is entitled to the society and the companionship of the others. Within the limits of the others' abilities, each is entitled to the financial aid and support of the others, although generally speaking, the children in their tender years can contribute nothing, and the wife, in view of her place in the home, may make but small financial contribution to the family exchequer. The children are entitled to shelter, food, clothing, and schooling and to the social, the moral support, guidance, and protection of their father, though in

turn they can contribute only companionship and the inspiration which comes from their association in the family circle.

Is the family relationship and the rights of the different members therein, arising therefrom, sufficient to support a cause of action in each, the father, mother, or children, against one who breaks it up and destroys rights of the said individual members?

Appellee concedes that such a cause of action exists in favor of the father and within certain limits and certain jurisdictions, also in favor of the wife. She denies that such a cause of action, however, exists in favor of the children.

The history of the development of the family and the family relations and the duties and obligations of the members of the family is a long one, covering centuries. Its development was slow, due to society's acceptance of the relative positions of the parties in the family and its reluctance to change such status. The husband was lord and master, and the rights of all of the members of the family were merged in him. He ruled. He spoke in the first person singular in all matters. He spoke authoritatively for all. Through the centuries, however, there came slowly a change. The father is still the master, it may be said, but the duties of the master have changed. Where it was said to be his duty to rule, he now serves. He recognizes rights of the others and his obligation to meet them.

Perhaps he is still the titular head of the family. If so, his position merely carries with it greater duties and obligations. The duties of each member of the family are measured (at least in theory and in legal conception) by the position, the role, each takes in the family. Thus we see the wife, the breadwinner, and speaking for the family when the husband becomes incapacitated through sickness or invalidism. And children of tender years take on the family financial burdens when father is incapacitated and mother must attend him or for other reasons is unable to contribute to the financial support of the family. Relativity of rights and duties marks the rights and the obligations of the group and relativity is determined in each case by the situation of the family. But relativity does not eliminate or destroy the rights of any member.

It is this conception of the family which must constitute our approach to the question at hand.

Another factor deserving consideration is the division which we must make of the rights of children. For the purpose of considering redress of such rights, we divide them into two groups. (a) The right to recover for injuries which arise from their right to support and maintenance from their parent. These rights are financial in character. (b) The right to recover for injuries to feelings and damages which arise from their rights to the comfort, the protection and the society of the father.

Defendant argues that such rights as here asserted have never been, and should not now be, recognized by any court until and unless legislation has been enacted creating such right. She argues that in the past, children's rights have not been judicially recognized, save after legislative enactment and she points to various specific acts[1] which the Illinois Legislature enacted to give rights which were not previously recognized. Particularly does she contend that the Federal Court should not exercise its power to grant redress in such cases where the state courts have not seen fit to recognize it.

Plaintiffs, on the other hand, rely upon the maxim, Ubi Jus Ibi Remedium. Also they refer to the bill of rights of the Illinois Constitution (Sec. 19, Art. 2, Smith-Hurd Stats.) where it is provided "Every person ought to find a certain remedy in the laws for all injuries and wrongs which he may receive in his person, property or reputation." They contend that the absence of precedent affords no justification for denial of a common law remedy where the right of an individual has been invaded by the wrongful act of another. Kujok v. Goldman, 150 N.Y. 176, 44 N.E. 773, 34 L.R.A. 156, 55 Am.St.Rep. 670; Pavesich v. New England Life Ins. Co., 122 Ga. 190, 50 S.E. 68, 69 L.R.A. 101, 106 Am.St.Rep. 104, 2 Ann.Cas. 561; Kine v. Zuckerman, 4 Pa. Dist. & Co. R. 227; Bennett v. Bennett, 116 N.Y. 584, 23 N.E. 17, 6 L.R.A. 553.

Instead of holding that there is no remedy, because there is no precedent, they argue for what they assert to be the better rule, and what Dean Pound calls judicial empiricism. In other words, the common

---

[1] The Dram Shop Act, Smith-Hurd Ill.Ann.Stat., ch. 43, § 135; Lord Campbell's Act; Patelski v. Snyder, 179 Ill.App. 24.

law has been and is sufficiently elastic to meet changing conditions. We quote from Dean Pound's book, "The Spirit of the Common Law," page 183:

"Anglo-American law is fortunate indeed in entering upon a new period of growth with a well-established doctrine of law-making by judicial decision. * * * Undoubtedly * * * judicial empiricism was proceeding over-cautiously at the end of the last century. * * * If the last century insisted over-much upon predetermined premises, and a fixed technique, it did not lose to our law the method of applying the judicial experience of the past to the judicial questions of the present."

Also quoted and relied upon are Pollock in his 1939 edition of "Torts," and Cooley in his Third Edition of "Torts," page 464, dealing with the subject of Family Rights.

 Our conclusion, without ' going further into the matter, is that a child today has a right enforceable in a court of law, against one who has invaded and taken from said child the support and maintenance of its father, as well as damages for the destruction of other rights which arise out of the family relationship and which have been destroyed or defeated by a wrongdoing third party. Likewise, we are persuaded that because such rights have not heretofore been recognized, is not a conclusive reason for denying them. They will be denied if it appears that the state court has spoken and denied them. If said rights have not been denied in the state court, we see no reason why the Federal Courts should be more prone to deny them or to grant them than a state court. If the state courts have not acted, we are free to take the course which sound judgment demands. In the absence of a state court ruling our duty is tolerably clear. It is to decide, not avoid, the question.

 We have considered the other con-tentions of the defendant and conclude that they need not be given separate treatment. They all seem to grow out of the age-old philosophy—"whatever is, is right." Prob-

ably no institution has given life and breath to this thought as freely as the judiciary. They are ever looking for precedents, as they should be. If none be found, however, they may not give up, —lost in darkness. The situation is not hopeless. In a society as complex as ours, rare is the situation where precedents cannot be found. And even in the common law, in 1945, if no precedents be found, courts can hardly be advisedly called radical if they indulge in lawmaking by decisions, or in a word, engage in judicial empiricism.

On this subject of the family and the rights and obligations of its members there has been a change in the accepted view of the status of the wife and the children. The courts have been rather slow to follow this accepted change. But they have belatedly accepted it and when once they accepted the change they have made law by their decisions.[2]

In announcing this law, they have applied recognized principles to new or newly accepted views of the political and social conditions revolving about the family and the status of each member thereof. After the first decisions are announced, there has usually been prompt acceptance of the view by other courts.

 It might, and probably will be argued, in this case, if it is ever submitted to a jury, that plaintiffs were not and could not be damaged by the loss of their father's society. This, however, would be a factual argument, not an application of the maxim, damnum absque injuria.

There is, we must confess, weight to the argument that no loss was suffered when the children were deprived of the society of a father who deserted them to run away with a married woman and who left his wife and children to struggle as best they could with the task of making a livelihood. In other words, before there can be a loss measured in damages, there must be something to lose. And a father should have at least a shadow of character before his loss can be said to create a claim for damages in his children. This

---

[2] Grable v. Margrave, 3 Scam. 372, 4 Ill. 372, 38 Am.Dec. 88; Yundt v. Hartrunft, 41 Ill. 9; Betser v. Betser, 186 Ill. 537, 58 N.E. 249, 52 L.R.A. 630, 78 Am.St. Rep. 303; Walgreen Co. v. Industrial Commission, 323 Ill. 194, 199, 153 N.E. 831, 48 A.L.R. 1199; Milliken v. Long, 188 Pa. 411, 41 A. 540; Kine v. Zuckerman, 4 Pa. Dist. & Co., R. 227; Graham v. Wallace, 50 App.Div. 101, 63 N.Y.S. 372; Bennett v. Bennett, 116 N.Y. 584, 23 N.E. 17, 6 L.R.A. 553; Waldron v. Waldron, C.C., 45 F. 315.

question of the amount of damages is, however, for the jury and the loss of financial support conceding there was nothing lost in the way of society when the father left his family, is still present.

The judgment is reversed with directions to proceed in accordance with the views expressed in this opinion.