## LOEB et al. v. BOARD OF EDUCATION OF CITY OF CHICAGO et al.

### No. 15263.

United States District Court
N. D. Illinois, E. D.

Feb. 29, 1952.

George Siegel, Irvin Richman, Benton Atwood, Howard Bryant, and Frank Madden, all of Chicago, Ill., for plaintiffs.

Joseph F. Grossman, Corp. Counsel, Gerald Chapman, Corp. Counsel, Chicago, Ill., for City of Chicago.

James Coffey, John Mehigan, Chicago, Ill., for Board of Education.

PERRY, District Judge.

In 1929 the Board of Education of the City of Chicago (hereafter called the Board) was faced with the serious financial problem of its existence. The very existence of the school system was threatened. No taxes had been collected for the year 1928 and it did not appear likely that any taxes would be collected in 1929. As it later turned out none was collected until 1931.

This situation was in no way the fault of the Board but had come about because of a complete reassessment of all property in Cook County pursuant to the order of the Illinois State Tax Commission. The 1927 property valuations for the City of Chicago upon which taxes could be based amounted to $4,250,437,799. Widespread fraud had been charged in arriving at the 1928 quadrennial tax valuations, resulting in an order vacating the 1928 assessment, when the re-assessment was completed the total valuation for the same property that had been valued at $4,250,437,799 was valued at $9,699,312,921. Using the valuation of $4,250,437,799 and applying the ed-

ucation tax rate of 1.47% and the building rate of one half of 1.00% the Board adopted a tax levy ordinance fixing the total amount of taxes for educational purposes at $62,400,000 and for building purposes $32,500,000.

Thereafter the Board of Education of the City of Chicago issued and sold tax anticipation warrants in the amount of 75% of each of the aforesaid amounts and upon the face of each warrant appeared the following words: "The total of each warrant so issued does not exceed seventy-five per cent of the tax levy made therefor."

■■■ Undoubtedly, the Board had the power and authority to make the foregoing warranty. Under Chapter 122, Illinois Revised Statutes, Sec. 162 (Smith-Hurd Ill. Rev.Stats., 1927 Ed.), relating to the establishment of a system of free education for cities and towns which exceed 100,000 in population (legislative definition for the City of Chicago), it is provided that "the board of education shall exercise all the powers that may be requisite or proper for the maintenance and the fullest development of an efficient public school system, not inconsistent with these general provisions of the school law of the state which apply to all districts." Chapter 122, Illinois Revised Statutes, Sec. 155 (Smith-Hurd Ill.Rev.Stat. 1929 Ed.), empowered the Board to issue tax warrants in anticipation of the 1929 taxes. Issuance was limited to 75% of the tax levy. This statute, however, contained no express limitation, which would prohibit the inclusion of a warranty on the face of the tax warrants themselves to the effect that the issue did not exceed 75% of the tax levy. There can be no doubt that the acquisition of funds for the operation of a school system is "proper for the maintenance and the fullest development of an efficient public school system". When, therefore, the legislature empowered the Board to *issue* anticipatory tax warrants without any legislative prohibition as to the making of warranties, it is reasonable to infer that the Board, by virtue of the provisions of Section 162, had the power and authority to *issue* these warrants with all the necessary incidents of such commercial transactions, and specifically, to make this war-

ranty in order to render these warrants more salable and attractive to the commercial public. An analogous result was upheld in County of Jackson v. Rendleman, 100 Ill. 379.

It should be said at this point, however, that at the time the warranty was made it was a true warranty in every respect. It was not until the actions and failures of the taxing bodies and the Board that the warranty was repudiated.

When the reassessment was completed and the taxes extended the amount of the tax levy ordinance fixing the amount needed for educational purposes at $62,400,000 and the amount needed for building purposes at $32,500,000 and the new increased valuation of the property from $4,250,437,799 to $9,699,312,921 were all completely disregarded by the Cook County Clerk, Board of Assessors and the Board of Education in extending taxes upon the books of the County and in making out tax bills for the payment thereof.

Instead, the valuation of $9,699,312,921 was treated as a 100% valuation and a magic percentage of 37% was applied so that the taxing authorities came up with a value for taxing purposes in the amount of $3,694,498,706.

■■■ All of the taxing authorities and particularly the Board of Education had full information and well knew that such action would produce just the result that it did, that is provide insufficient funds to pay the holders of 1929 tax anticipation warrants contrary to the express warranty of the tax warrants. It became then and remained at all times the duty of the Board of Education to institute a mandamus proceeding or take other appropriate remedy to protect its tax levies. This it failed and neglected to do and in the judgment of the Court this action was a deliberate fraud committed against the very people who provided the money to keep open the schools in Chicago in a period of a great emergency.

■■■ The Court takes judicial notice of the fact that the authorities justified their action upon the ground of expediency and that the down state counties used a similar

percentage and that by following the system used by the down state counties 63% of the burden for the support of state government for the years of 1928, 1929, 1930 and 1931 could be avoided, which expediency only created a crisis in the finances of the State of Illinois, hastening the enactment of the sales tax law.

 While such reasons may provide an excuse they do not provide a sufficient reason to invalidate the written warranty of the Board of Education of a great American city. The written warranty of a municipality, and particularly one charged with the education of our youth, must certainly come up to a standard that private citizens and private corporations are required to meet.

 This suit was properly brought in the equity. Much is made of legal defenses by the defendant Board. It is well established that tax anticipation warrants are but an assignment of the taxes for that particular year, but that is no excuse for the tax anticipation warrants to fail to speak the truth.

 The Court has considered the defendant Board's contention that it is a quasi-municipal corporation and cannot be held liable for the torts of its officers. It is sufficient for the Court to comment that this doctrine cannot be extended to protect a quasi-municipal corporation, or any other public or private body in retaining unjust enrichment falling to it and used by it when such unjust enrichment is obtained as a result of a legal fraud, as was done in this case.

 It is perfectly clear from the record and from facts within the judicial knowledge of this Court that the amount of 1929 tax remaining uncollected is infinitesimal and that the holders and owners of the 1929 tax anticipation tax warrants can never be paid out of the 1929 tax collections and can only look to the corporate fund of the Board and they are entitled to do so because of the false warranty set forth upon the face of the warrants.

The Court has been pressed with the argument that payment of these warrants has been passed upon by the Illinois Supreme Court. This Court has with great care examined each and every decision of that court and finds such argument is not substantiated by the record. In fact that court's decisions in each and every instance are unassailable when the record is studied. That court has never had presented to it the question of warranty or the exhaustion of the 1929 taxes as presented herein. That court could come to no other conclusion then it did concerning the issuance of bonds founded upon judgments that were clearly void.

 Neither can the defense of res adjudicata or statute of limitations be availed of in this case.

 The Board of Education itself, in recognition of its moral obligation to pay its 1929 tax anticipation warrants authorized the issuance of bonds on two occasions. Now the Board has reversed its position and is opposed to a payment of this obligation, presumably because of criticism concerning litigation limited to the priority of payments and resulting in confusion over the order of payment of bonds according to serial numbers and upon pro-rata basis. If the Board had a moral obligation at the time it issued the bonds, it certainly has an obligation at the present time.

 Because of the action of the Board in attempting to issue bonds for payment of its 1929 tax warrants and for other equitable reasons the Court has seen fit to reduce the interest rate from 6% per annum to 2½% for unpaid interest as set forth in the decree filed herewith.

Article 2, Section 19 of the Illinois constitution, S.H.A., provides as follows: "Every person ought to find a certain remedy in the laws for all injuries and wrongs which he may receive in his person, property or reputation". Certainly the purchasers of the 1929 tax anticipation warrants acted in good faith, rendered a great service to the Board of Education and its taxpayers and have been wronged because of the failure of the Board to honor their warrants. They are entitled to a remedy.

It is the duty of this court of equity to provide that remedy. Daily v. Parker, 7 Cir., 152 F.2d 174, 162 A.L.R. 819; Parker **v.** Parker, 335 Ill.App. 293, 81 N.E.2d 745.

Amendment XIV of the Federal Constitution provides as follows: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

 Unless the holders and owners of the 1929 tax anticipation warrants issued by the Board of Education and in controversy are granted relief in this Court it is apparent from the record that they will be without remedy and will be deprived of their property without due process of law.

Either the plain unequivocal language of the constitution of the State of Illinois and of the United States mean what they say or these provisions are pure hypocrisy and make constitutions nothing but dead letters. This Court looks upon all provisions of both constitutions as having full force and effect, and more especially those protecting the life, liberty, pursuit of happiness and personal and property rights of individuals.

 The evidence reveals that on December 24, 1929, the sum of three million, one hundred thousand dollars were surplus funds and should have been applied to the payment of the 1929 tax anticipation warrants but instead were used for the purchase of school grounds, the construction of new school buildings and for permanent improvements, all of which is described in Joint Exhibit No. 9. The holders of the tax warrants issued for building purposes in the year 1929, are therefore entitled to an equitable lien upon the premises described in said Joint Exhibit No. 9 but

such a lien is not one that shall be enforceable by sale but only by the order and decree of the court or other appropriate remedy whereby the Board of Education shall be compelled to issue taxes to remove such lien in some manner for the payment of their tax anticipation warrants over which the controversy exists. Nuveen v. Board of Public Instruction 5 Cir., 88 F.2d 175; Haywood v. City of Corpus Christi, Tex.Civ.App., 195 S.W.2d 995.

In conclusion it is sufficient to say that these 1929 tax anticipation warrants that carried an express warranty that thereafter became false because of the acts of the Board and other tax levying authorities constitute both a moral and legal debt for the Board of Education of the City of Chicago and should be forthwith honored as such. The Board of Education should set an example of honesty and fair dealing instead of seeking by legal technicalities to avoid its obligations. A degree so providing is accordingly entered at this time.

| | |
|---|---:|
| Ernest M. Loeb, Jr. and Robert E. Loeb | $575,000 |
| Chase National Bank | 205,000 |
| First Service Corporation of Minnesota | 16,000 |
| First National Bank of Boston | 106.000 |
| Marie L. Reuther | 10,000 |
| Albert Schoenberg and Keystone Corporation | 260,000 |
| Michael Oppenstein, Samuel Oppenstein and Harry Oppenstein | 30,000 |
| Ruth Kegel, individually | 58,000 |
| Ruth Kegel, guardian of Estates of James Cohen, Betty Cohen and Joan Cohen, Minors | 90,000 |
| Emile Kahn | 199,000 |
| Franklin P. Guidroz | 30,000 |
| Cora D. Tanner, Godchaux, Executrix of Estate of Jules Godchaux | 20,000 |
| Dorothy Smith Booth | 7,000 |

There are a large number of other holders of warrants similarly situated totalling ten or twelve million dollars who are not before the court in this action but who will probably be affected by this decree.