**Michaela BRANDTSCHEIT, a Minor, etc., Plaintiff,**

v.

**Harold W. BRITTON, Defendant.**

**Civ. No. 42547.**

United States District Court
N. D. California, S. D.
March 24, 1965.

Henry M. Jonas, San Francisco, Cal., for plaintiff.

Severson, Zang, Werson, Berke & Larson, San Francisco, Cal., Kurt W. Melchior, San Francisco, Cal., appearing, for defendant.

WOLLENBERG, District Judge.

This is an action to establish paternity and to provide support for an illegitimate minor child. Plaintiff is a citizen of the Federal Republic of Germany and defendant is a citizen of the United States and of the State of California. It is claimed that the amount in controversy exceeds $10,000 and for purposes of deciding this motion such contention will be conceded. Defendant moves to dismiss on the ground this Court lacks subject matter jurisdiction.

This is a diversity action though plaintiff argues there is also federal jurisdiction by virtue of the Treaty of Friendship between the Federal Republic of Germany and the United States which became effective July 14, 1956. Nothing in the Treaty, however, confers subject matter jurisdiction on the federal courts. At most Paragraph 7 of the Protocol[1] grants the right to German citizens to file suits *in forma pauperis* in federal courts. This right is not any greater than the right accorded United States citizens.[2] Consequently, the subject matter jurisdiction of this Court must be determined by standards normally applied to diversity actions.

The general rule in diversity cases is that federal courts do not have jurisdiction in "domestic relations" cases. 1 Barron & Holtzoff (Wright ed.), § 40.1. This is a judge made rule based on a dictum in an early Supreme Court case, Barber v. Barber, 21 How. 582, 584, 16 L.Ed. 226 (1858), and on a later sweeping statement in Ex Parte Burrus, 136 U.S. 586, 593–594, 10 S.Ct. 850, 853, 34 L.Ed. 500 (1890) that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States."

The rule is not absolute or conclusive because there is no direct Supreme Court holding and no clear cut definition of

1. Paragraph 7 of the Protocol reads: "7. With respect to Article VI, paragraph 1, nationals of either Party shall be accorded national treatment within the territories of the other Party:
"(a) with respect to suits *in forma pauperis*, in proceedings in the Federal Courts of the United States of America;
"(b) with respect to the pauper's right (*Armenrecht*) in proceedings before the courts of the Federal Republic of Germany, in types of cases which in the United States of America would fall within the Federal jurisdiction or could be brought before the Federal courts."
It should be noted that the reciprocal treatment of the treaty is specifically limited in cases in German courts to those analogous to United States Federal court jurisdiction. United States citizens claiming the *Armenrecht* cannot bring cases which are not analogous to Federal cases in German courts by virtue of this Treaty.

2. Article VI, paragraph 1 of the Treaty provides nothing more than that nationals of either signatory "shall be accorded national treatment with respect to access to the courts" of the other signatory. The purpose of the Treaty is to assure "on a reciprocal basis, national and most-favored-nation treatment for citizens of Germany and the United States * * *." Senate Executive Report, No. 10, 84th Congress, First Session, p. 1.

"domestic relations." In several border line cases federal courts have accepted jurisdiction where there was compelling reason to do so and it could reasonably be argued that the action was not simply a "domestic relations" case. Daily v. Parker, 152 F.2d 174, 162 A.L.R. 819 (7th Cir., 1945) (suit by children against their father's paramour for alienation of affections and enticement from home treated as tort); Abdul-Rahman Omar Adra v. Clift, D.C., 195 F.Supp. 857 (1961) (suit for child custody by foreigner treated as tort action since foreign law so regarded it).[3] On the other hand, at least one circuit has clearly held that there is no federal jurisdiction in support actions between an illegitimate child and its putative father. Albanese v. Richter, 161 F.2d 688 (3rd Cir., 1947).

It has been suggested that a distinction should be made between cases involving "status" and those involving "property rights" with the federal courts accepting jurisdiction only of the latter. Vestal and Foster, Implied Limitations on the Diversity Jurisdiction of Federal Courts, 41 Minn. L.R. 1, 31. The difficulty is that many cases involve both. Moreover, there is no persuasive reason why jurisdiction should be decided by such an arbitrary formula. Much more persuasive is reasoning based on sound policy considerations in the light of the circumstances within which litigants find themselves. The reasoning of Judge Thomsen in Abdul-Rahman Omar Adra v. Clift, supra, 195 F.Supp. at 865, is instructive:

"The federal courts have generally declined jurisdiction in cases involving domestic relations.  *  *  *

State courts have undoubted competence and wide experience in dealing with [such] cases  *  *  *.  On the other hand, this case involves, among other questions, those of nationality and entry into the United States, with which federal courts are familiar. Plaintiff is a citizen of a friendly nation, with which the United States has long had cultural contacts. An alien, understandably though unjustifiably, may prefer to bring an action for a tort in a federal court rather than in a local court, and Congress has authorized him to do so in this limited class of cases. [28 U.S.C. § 1350.] *The importance of foreign relations to our country today cautions federal courts to give weight to such considerations and not to decline jurisdiction given by an Act of Congress unless required to do so by dominant considerations.*" (Emphasis supplied.)

In the present case plaintiff is a citizen of a nation with which it is of the utmost importance that friendly relations be maintained. By treaty the United States has indicated a desire to open its courts to afford redress to citizens of plaintiff's nation when they have claims against United States citizens. To deny plaintiff the opportunity to obtain redress on the ground that federal judges have traditionally declined to hear certain types of cases would not only raise understandable suspicions concerning American justice but would clearly not be in the national interest.[4]

3. Analogous to the "domestic relations" rule is the rule that federal courts do not have jurisdiction in "probate matters." This rule too has been subject to flexible interpretation. See Akin v. Louisiana National Bank of Baton Rouge, 322 F.2d 749 (5th Cir. 1963) (jurisdiction accepted of suit to establish heirship after completion of probate in state court).

4. It should be pointed out that plaintiff's claim arose indirectly from the operation of national policies. Her allegation is that she was born out of wedlock as the result of a relationship between defendant and a German woman formed while defendant was serving in the U. S. armed forces in Germany. For the political significance of the "partnership" with Germany see Senate Executive Report, No. 10, 84th Congress, First Session, pp. 3–4.

The central question then is whether plaintiff will be denied an opportunity to seek legal redress if the federal courts decline jurisdiction. Availability of a state remedy is of course crucial in determining this question. Plaintiff concedes that she can file an action in the courts of California. However, she claims that the expense would be prohibitive. Not only would she be practically barred from bringing suit but she argues that if the federal courts refuse to take jurisdiction "in these cases, hundreds, if not thousands of children that have been procreated by members of the Army of occupation or subsequently by members of the United States Forces being stationed within the territory of the Federal Republic of Germany, would not be able to assert their rights in any court of law."

This argument might be persuasive if it could be shown that such children, including plaintiff, are unable to secure redress in state courts because of their poverty. However, no such showing has been made in this case. California law permits the filing of actions in forma pauperis. 13 Cal.Jr.2d § 27. Although California Code of Civil Procedure § 1030 requires on demand of the defendant that a non-resident plaintiff give security for costs no showing has been made that the defendant herein will make such demand nor that plaintiff could not provide security. Moreover, the provisions of California Civil Code § 137.3 may be invoked to remove the burden from plaintiff[5] of providing costs for suit *pendente lite*.

█ It may be that the rigid rule of Albanese v. Richter, supra, will be followed in this circuit, and this suit could be dismissed solely on that ground. However, it is preferable to rest a decision to decline jurisdiction on the ground that federal courts should not meddle where they have no special competence,

where there is no showing that the state remedy is inadequate, and Congress has not clearly conferred jurisdiction.

Accordingly, defendant's motion to dismiss for lack of subject matter jurisdiction is hereby granted.

---

5. This Court has been unable to find any California case directly on the point of the application of Civil Code § 137.3 to a demand for security for costs made under Code of Civil Procedure § 1030. Presumably if the issue is raised in California the state courts will take into account the implications discussed herein in reaching a decision. Of course, a direct California ruling adverse to plaintiff and others similarly situated would have to be taken into account in a subsequent analysis of federal jurisdiction.